IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | CIVIL ACTION NO. 3:14-145 |
| as Administrators of the Estate of | ) | |
| BRANDON PALAKOVIC, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, KENNETH CAMERON, | ) | |
| JAMIE BOYLES, JAMEY LUTHER, | ) | |
| JAMES HARRINGTON, DR. RATHORE, | ) | |
| MICHELLE HOUSER, MORRIS | ) | |
| HOUSER, FRANCIS PIROZZOLA, | ) | |
| JOHN DOE #1, #2, JOHN DOES #3-6, | ) | |
| MHM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

I.    **Introduction**

This civil rights action arises from the suicide of Brandon Palakovic while he was

incarcerated at the State Correctional Institution at Cresson ("SCI Cresson") and housed

in the prison's Restricted Housing Unit ("RHU").  Plaintiffs—Palakovic's parents and the

administrators of his estate—have asserted various civil rights claims against Defendants,

alleging violations of the Eighth and Fourteenth Amendments to the Constitution and the

Americans with Disabilities Act ("ADA"), as well as state law claims.  Presently before the

Court are Defendants' motions to dismiss (ECF Nos. 9, 10)[1] the complaint pursuant to

---

[1] ECF No. 9 is a motion to dismiss filed by the "Corrections Defendants," including John Wetzel, Kenneth Cameron, Jamie Boyles, Jamey Luther, James Harrington, Michelle Houser, Morris Houser, and Francis Pirozzola.  ECF No. 10 is a motion to dismiss filed by the "Mental Health Defendants," including Dr. Rathore and MHM, Inc.

Federal Rule of Civil Procedure 12(b)(6).  Having reviewed the motions and briefs, along with the applicable law, and for the reasons explained below, the Court will **GRANT** Defendants' motions to dismiss.  However, Plaintiffs will be granted leave to file an amended complaint.

## II.    Jurisdiction

The Court has jurisdiction over the federal constitutional claims pursuant to 28 U.S.C. § 1331, 1343(a)(3) and (4), and 42 U.S.C. § 1983.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III.    Background

This case involves the untimely death of Brandon Palakovic, who committed suicide while he was incarcerated at SCI Cresson.  The following facts are alleged in the complaint, which the Court will accept as true for the sole purpose of deciding the pending motions.

Palakovic was sentenced to serve 16-48 months imprisonment for burglarizing an occupied structure.  (ECF No. 1 ¶ 21).  Palakovic began his sentence in June 2011 and was incarcerated at SCI Cresson.  (*Id.*).  During the thirteen months while he was at SCI Cresson, Palakovic was "repeatedly subjected to solitary confinement via placement in the prison's Restricted Housing Unit (RHU), characterized by extreme deprivations of social interaction and environmental stimulation, abusive staff, and inadequate to non-existent

mental health care." (*Id.* ¶ 22). According to Plaintiffs, "Defendants created and sustained conditions of solitary confinement in the RHU that subjected Brandon Palakovic to torture, causing him to take his own life." (*Id.* ¶ 24). Four days before his death, Palakovic was placed in solitary confinement for a minor rules violation. (*Id.* ¶ 45). On July 17, 2012, Palakovic committed suicide. (*Id.* ¶ 24). Palakovic had a history of mental health issues as a child and was institutionalized for mental health reasons on four occasions and had been diagnosed with various mental illnesses. (*Id.* ¶ 25).

Palakovic's parents, as administrators of his estate, commenced this action by filing a five-count complaint on September 8, 2014. (ECF No. 1). Count I asserts a claim for deliberate indifference to the deprivation of basic human needs in violation of the Eighth and Fourteenth Amendments to the Constitution. (*Id.* ¶¶ 139-40). Count II asserts a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 141-42). Count III asserts a claim for discrimination on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 143-45). Count IV asserts a wrongful death claim under Pennsylvania law. (*Id.* ¶¶ 146-51). Count V asserts a survival action under Pennsylvania law. (*Id.* ¶¶ 152-54).

Defendants now move to dismiss the complaint. (ECF Nos. 9, 10). The parties have fully briefed the Court on the pending motions (*see* ECF Nos. 11, 13, 17, and 18), and this matter is now ripe for adjudication.

## IV.    Standard of Review

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted.  Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established.  *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis.  First, the court must separate the factual matters averred from the legal conclusions asserted.  *See Fowler*, 578 F. 3d at 210.  Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "plausible claim for relief."  *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint need not include "detailed factual allegations."  *Phillips v. County of Allegheny*, 515 F. 3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party.  *See id*. at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d 651, 653 (3d Cir. 2003)).  However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, the complaint must present sufficient "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F. 3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a "context specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F. 3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F. 3d at 236; *see also Shane v. Fauver*, 213 F. 3d 113, 115 (3d Cir. 2000).

## V.     Discussion

The Corrections Defendants have filed a motion to dismiss the complaint, arguing that Plaintiffs have failed to state a cognizable Eighth Amendment claim arising from Palakovic's suicide, that Plaintiffs have failed to sufficiently allege the personal involvement of several of the Corrections Defendants in the underlying constitutional violations, that Plaintiffs' ADA claim against the Corrections Defendants in their individual capacities is not cognizable as a matter of law, and that Plaintiffs' state law claims for wrongful death and survivorship are barred by sovereign immunity. In

response, Plaintiffs "concede that Counts Four and Five are appropriately dismissed against all [Corrections] Defendants except Dr. Harrington." (ECF No. 17 at 1). However, Plaintiffs argue that the complaint states cognizable Eighth Amendment conditions of confinement and mental health claims against each of the Corrections Defendants, that Plaintiffs' ADA claim is properly asserted against the Corrections Defendants in their official capacities, and that Plaintiffs' state law claims against Dr. Harrington are not barred by sovereign immunity.

The Mental Health Defendants have also filed a motion to dismiss the complaint, arguing that Plaintiffs have failed to establish that Defendants acted with deliberate indifference to support Plaintiffs' Eighth and Fourteenth Amendment claims, that Plaintiffs have failed to allege a cognizable discrimination claim under the ADA, and that the facts alleged in the complaint do not support a claim for punitive damages. Plaintiffs concede that Count III should be dismissed as to the Mental Health Defendants, MHM, Inc., and Dr. Rathore. (ECF No. 18 at 1).[2] However, Plaintiffs contend that the complaint adequately alleges facts supporting cognizable Eighth Amendment claims for deliberate indifference to conditions of confinement and serious medical needs, and that the complaint adequately alleges facts supporting a claim for punitive damages.

---

[2] As Plaintiffs explain, the Mental Health Defendants "are not subject to liability under the [ADA], as courts have held that as private contractors they do not meet the 'public entity' requirement of Title II." (ECF No. 18 at 14; *see also* ECF No. 13 at 6-7).

**A. Counts I and II – Eighth and Fourteenth Amendment Claims**

In Counts I and II of the complaint, Plaintiffs allege violations of Palakovic's Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Tatsch-Corbin v. Feathers*, 561 F. Supp. 2d 538, 543 (W.D. Pa. 2008) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiffs must establish that Defendants acted with deliberate indifference to Palakovic. *See Tatsch-Corbin*, 561 F. Supp. 2d at 543. In the context of prison suicide cases, "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Wargo v. Schuylkill Cnty.*, 348 F. App'x 756, 759 (3d Cir. 2009) (quoting *Colburn v. Upper Darby Twp.*, 838 F. 2d 663, 669 (3d Cir. 1988)); *see also Clentscale v. Beard*, No. 3:07-cv-307, 2008 WL 3539664, at *2 (W.D. Pa. Aug. 13, 2008). The Supreme Court has instructed that deliberate indifference occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

This Court has previously summarized the deliberate indifference standard in prison suicide cases as follows:

> "[A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Township*, 946 F. 2d 1017, 1023 (3d Cir. 1991). In order to establish liability, Plaintiffs must prove that [Defendants] "[knew] of and disregard[ed] an excessive risk to the inmate's health or safety." *Natale v. Camden County Correctional Facility*, 318 F. 3d 575, 582 (3d Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiffs must show that [Defendants were] "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that she drew] the inference." *Natale*, 318 F. 3d at 582; *Farmer*, 511 U.S. at 837. A factfinder may determine the actor's knowledge through "circumstantial evidence" or "may conclude that [an actor] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

*Tatsch-Corbin*, 561 F. Supp. 2d at 543-44.

Plaintiffs have asserted two distinct, though related, claims under the Eighth and Fourteenth Amendments. First, Plaintiffs assert a claim alleging a "conditions of confinement" claim. Second, Plaintiffs assert a claim alleging deliberate indifference to a serious medical need. Both claims are premised on allegations that SCI Cresson treated mentally ill prisoners, including Palakovic, with deliberate indifference by "warehousing" them in solitary confinement housing units. The legal principles set forth above apply to both of these claims. The Court will separately evaluate each claim under this Circuit's deliberate indifference test, as stated above.

### 1. Count I – Conditions of Confinement

In Count I (ECF No. 1 ¶¶ 139, 140), Plaintiffs allege that Defendants violated Palakovic's constitutional right to be free from cruel and unusual punishment by placing him in conditions of solitary confinement, which are "known to cause harm to

psychologically vulnerable individuals." Plaintiffs contend that Defendants were deliberately indifferent by placing Palakovic in solitary confinement, given his mental health vulnerabilities, which deprived him of basic human needs of environmental stimulation, social interaction, mental health, and physical health.

To begin, this Court notes that this case involves a prison suicide and that the "vulnerability to suicide" standard used by courts in this Circuit applies to Plaintiffs' allegations. Plaintiffs argue that the vulnerability to suicide standard is inapplicable to this case. (*See* ECF No. 17 at 12-14). The Court disagrees. The ultimate harm alleged by Plaintiffs is Palakovic's death by suicide, which Plaintiffs allege was caused by Defendants' deliberate indifference. Thus, the vulnerability to suicide standard provides the necessary framework for evaluating Plaintiffs' claims. Nevertheless, even if the vulnerability to suicide standard were inapplicable to either of Plaintiffs' two Eighth Amendment claims, the result would be the same. For the reasons explained below, Plaintiffs have failed to allege sufficient facts to plausibly establish that Defendants were deliberately indifferent to Palakovic's conditions of confinement or his serious medical needs in relationship to his mental health issues.

As detailed above, the law concerning the standard of liability to be applied in prison suicide cases is well-settled in this Circuit. Importantly, the Third Circuit has held

> [I]f [custodial] officials know or should know of the particular
> vulnerability to suicide of an inmate, then the Fourteenth Amendment
> imposes on them an obligation not to act with reckless indifference to that
> vulnerability. Thus, a plaintiff in a prison suicide case has the burden of
> establishing three elements: (1) the detainee had a particular vulnerability
> to suicide, (2) the custodial officer or officers knew or should have known

of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability.

*Colburn*, 946 F. 2d at 1023 (citations and quotations omitted). Here, Plaintiffs have not alleged facts sufficient to establish any of these elements to state a plausible claim for relief.

First, Plaintiffs have not alleged facts showing that Palakovic had a particular vulnerability to suicide. The Third Circuit has explained that a particular vulnerability to suicide means that "there must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Woloszyn v. County of Lawrence,* 396 F. 3d 314, 320 (3d Cir. 2005); *see also Estate of Puza v. Carbon Cnty.,* 586 F. Supp. 2d 271, 277 (M.D. Pa. 2007). Plaintiffs' complaint is devoid of any factual allegations that there was a strong likelihood that self-inflicted harm would occur. The only allegations in the complaint that relate to Palakovic's vulnerability to suicide are that Palakovic was taking an anti-depressant that had as a side effect suicidal thoughts and that a DOJ Report published a year after his death concluded that he had a history of self-harm and suicide attempts:

> [Palakovic] was prescribed the anti-depressant Celexa while at SCI Cresson.
>
> According to clinical studies, suicidal thoughts and impulses are some of Celexa's side effects.
>
> [Palakovic] had "a history of self-harm and suicide attempts . . ."

(ECF No. 1 ¶¶ 27, 28, 37). However, these allegations are insufficient to establish a strong likelihood that Palakovic would inflict self-harm. *See, e.g., Litz v. City of Allentown*, 896 F. Supp. 1401, 1410 (E.D. Pa. 1995) (collecting cases discussing allegations that are sufficient to establish a vulnerability to suicide).

Likewise, Plaintiffs have not alleged facts showing that Defendants knew or should have known about Palakovic's particular vulnerability to suicide. Knowledge of an inmate's particular vulnerability to suicide can be established through psychiatric history—"Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Colburn*, 946 F. 2d at 1025; *Tatsch-Corbin*, 561 F. Supp. 2d at 544. Importantly, the complaint is devoid of any allegations that Defendants in this case had any knowledge of Palakovic's vulnerability to suicide. While the complaint cites to a DOJ Report that states Palakovic had "a history of self-harm and suicide attempts," there are no allegations that any of the Defendants knew of this history of self-harm or suicide attempts at the time that Palakovic was incarcerated at SCI Cresson. The complaint does not allege that Palakovic attempted suicide or expressed a desire to commit suicide while a prisoner. Likewise, while the complaint alleges that Palakovic had a history of mental illness, had been diagnosed with various mental disorders, and had been placed on the prison's mental health roster and was receiving treatment,[3] the complaint does not allege that any of Palakovic's mental illnesses or diagnosis were accompanied by suicidal propensities.

---

[3] Specifically, the complaint alleges:

> [Palakovic] had a history of mental health issues as a child. He had been institutionalized for mental health reasons on four occasions since age 11.

> While incarcerated at SCI Cresson, [Palakovic] was on the mental health roster, indicating that he had a need for mental health care.

> [Palakovic] was prescribed the anti-depressant Celexa while at SCI Cresson.

Finally, the complaint fails to allege facts showing that Defendants were deliberately indifferent to that vulnerability. Deliberate indifference in the prison suicide context requires that Defendants "knew of a strong likelihood of suicide and disregarded that risk by failing to take reasonable measures to address it." *Estate of Puza*, 586 F. Supp. 2d at 277. Analysis of this factor requires a subjective examination rather than an objective one. *Id*. In other words, "the court must examine what the prison officials were actually aware of as opposed to what they should have been aware of." *Id.*, at 277-78 (citing *Woloszyn*, 396 F. 3d at 321). A complaint may allege that a defendant has exhibited deliberate indifference to a prisoner's vulnerability for suicide in one of several ways. For example, a defendant might have taken affirmative action directly leading to the prisoner's suicide. Allegations of such direct action are sufficient to withstand dismissal. *See Freedman v. City of Allentown, Pa.*, 853 F. 2d 1111, 1115 (3d Cir. 1988). Likewise, a complaint will withstand a Rule 12(b)(6) challenge where it alleges that a defendant actually knew of the suicidal tendencies of a particular prisoner and ignored the responsibility to take reasonable precautions. *Id*. Finally, "when the factual scenario presented by plaintiff suggests that defendants should have known that the prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Id*. Here, Plaintiffs have failed to allege facts showing any of these scenarios.

---

According to clinical studies, suicidal thoughts and impulses are some of Celexa's side effects.

(ECF No. 1 ¶¶ 25, 26, 27, 28).

In sum, the complaint is devoid of any allegations to plausibly establish that Palakovic had a particular vulnerability to suicide or that Defendants knew or should have known about Palakovic's vulnerability to suicide. The allegations in the complaint that Defendants knew that Palakovic was on an anti-depressant, that he had a history of mental illness, and that he was receiving mental health care at the prison are not sufficient to establish that Defendants were aware of any risk of suicide. Similarly, the allegation in paragraph 37 that Palakovic had "a history of self-harm or suicide attempts" is a conclusion from a Department of Justice Report published nearly one year after Palakovic's death. But, despite this alleged report,[4] nowhere do Plaintiffs allege that any of the Defendants had any knowledge of Palakovic's history of suicide attempts or suicidal thoughts. There are no allegations in the complaint that Palakovic attempted suicide while at the prison or made his suicidal thoughts or tendencies known to Defendants. While the Department of Justice might have made a finding that Palakovic had a history of suicide attempts, that allegation is insufficient to establish that the Defendants themselves knew of and disregarded the risk of suicide. *Woloszyn v. Cnty. of Lawrence*, 396 F. 3d 314, 320 (3d Cir. 2005) ("Even where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood.") (quoting *Colburn v. Upper Darby Township*, 946 F. 2d 1017, 1024 (3d Cir. 1991)). There are simply no facts in the complaint alleging that Defendants knew of or should have known of the strong likelihood that Palakovic would commit suicide.

---

[4] The DOJ Report, while referenced in the complaint, has not been made part of the record before the Court. Additionally, Defendants argue that it is not appropriate for this Court's consideration on the instant motions to dismiss.

Likewise, there are no allegations that Palakovic had any suicidal thoughts as a side effect of the anti-depressant that he was taking. Instead, the only averments linking Defendants to Palakovic's suicide are allegations that Defendants placed Palakovic in solitary confinement, despite knowing that he had mental health issues and knowing that conditions of solitary confinement exacerbate mental health issues which could lead to self-harm or suicide. (ECF No. 1 ¶¶ 23, 24, 29, 30). For example, Plaintiffs allege that Defendants were aware that placing a mentally ill prisoner in solitary confinement may "cause severe psychological harm, exacerbate pre-existing mental health problems, and generated the majority of suicides, suicide attempts, and acts of self-harm." (ECF No. 1 ¶ 23). However, this allegation is insufficient under the vulnerability to suicide standard to state a plausible claim for relief.

Plaintiffs simply have not alleged facts showing that any of the Defendants knew about Palakovic's particular vulnerability to suicide. Plaintiffs' generalized allegations concerning mentally ill prisoners placed in solitary confinement are insufficient to state a plausible claim for relief under the Eighth Amendment. Accordingly, Defendants' motions to dismiss Count I will be granted.

## 2. Count II – Deliberate Indifference to Serious Medical Needs

In Count II of the complaint (ECF No. 1 ¶¶ 141, 142), Plaintiffs allege that Defendants violated Palakovic's Eighth and Fourteenth Amendment rights through their deliberate indifference to his serious medical need for mental health care. "[I]n the context of Eighth Amendment claims based on medical care, a plaintiff must demonstrate

deliberate indifference to a serious medical need." *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013). "Prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit 'deliberate indifference to serious medical needs of prisoners.'" *Colburn v. Upper Darby Twp.*, 946 F. 2d 1017, 1023 (3d Cir. 1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F. 3d 318, 330 (3d Cir. 2009). The deliberate indifference standard in this context is two-pronged: "'[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.'" *Scherer v. Pennsylvania Dep't of Corr.*, No. 3:04-cv-191, 2007 WL 4111412, at *12 (W.D. Pa. Nov. 16, 2007) (quoting *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F. 2d 326, 346 (3d Cir. 1987)). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. A medical need is also serious where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' or 'a life-long handicap or permanent loss.'" *Atkinson v. Taylor*, 316 F. 3d 257, 272–73 (3d Cir. 2003) (citations omitted). The Third Circuit has recognized that a "particular vulnerability to suicide" represents a "serious medical need." *Colburn*, 946 F. 2d at 1023.

A prison official displays deliberate indifference when he (1) knows of a prisoner's need for medical treatment yet refuses to administer it; (2) delays medically necessary treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *May v. Cash*, No. 3:13-cv-00069, 2014 WL 295717, at *6 (W.D. Pa.

Jan. 23, 2014); *see also Rouse v. Plantier*, 182 F. 3d 192, 197 (3d Cir. 1999)). Stated another way, the inquiry is whether the defendant in question displayed an "obduracy and wantonness" that demonstrates a recklessness or a conscious disregard of a serious risk to the prisoner's health and safety. *See Rouse*, 182 F. 3d at 197 (citing *Whitley v. Alders*, 475 U.S. 312, 319 (1986) and *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Demonstrating mere negligence or even professional malpractice does not on its own amount to deliberate indifference that would sustain an Eighth Amendment claim. *Spruill v. Gillis*, 372 F. 3d 218, 235 (3d Cir. 2004).

Here, Plaintiffs have not alleged sufficient facts in their complaint to establish a plausible claim for relief under the Eighth and Fourteenth Amendment of deliberate indifference to Palakovic's serious medical need for mental health care. Initially, the Court notes that, as explained above, the complaint has not alleged that Palakovic had a particular vulnerability to suicide. Additionally, the complaint does not allege facts showing that Defendants were deliberately indifferent to Palakovic's serious medical needs related to his mental health treatment at the prison. The complaint describes Palakovic's mental health treatment at SCI Cresson as follows:

> [Palakovic] had a history of mental health issues as a child. He had been institutionalized for mental health reasons on four occasions since age 11. He had been given [numerous] diagnoses during his childhood.

> While incarcerated at SCI Cresson, [Palakovic] was on the mental health roster, indicating that he had a need for mental health care.

> [Palakovic] was prescribed the anti-depressant Celexa while at SCI Cresson.

[Palakovic] experienced decompenation during his times in solitary confinement, as he was unable to cope with the conditions in the RHU due to his mental health needs, causing psychological deterioration.

Less than two weeks before his death, [Palakovic] requested one-on-one counseling with a psychiatrist. The psychiatrist ignored [Palakovic's] request and did not provide [Palakovic] with any treatment.

Psychology staff visited [Palakovic] in December of 2011 and May of 2012. He was ordered for a June psychiatric visit, but this visit did not occur until 11 days before his suicide on July 16.

[Palakovic] also expressed concern that his medications were not working.

The level of mental health care provided to [Palakovic] was grossly deficient, manifesting a deliberate indifference to his serious medical need for mental health care. Interviews in clinically appropriate settings were inadequate or non-existent.

Mental health staff only provided [Palakovic] with medication for his mental health needs, refusing other forms of necessary treatment.

(ECF No. 1 ¶¶ 25, 26, 27, 38-43). These allegations demonstrate that Palakovic had a serious medical need. The facts in the complaint show that Palakovic had significant mental health issues, for which the prison was required to provide adequate treatment and care. However, the complaint's allegations fail to show that Defendants were deliberately indifferent to Palakovic's serious medical needs. Indeed, Palakovic was placed on the prison's mental health roster, he was prescribed medication, and he was visited by mental health staff. While the complaint alleges that Palakovic's request for one-on-one counseling was ignored, the complaint avers that he had a psychiatrist visit just 11 days prior to his death. Likewise, while the complaint avers that the health care provided to Palakovic was "grossly deficient, manifesting a deliberate indifference to his serious medical need," the complaint fails to allege any facts beyond these legal

conclusions and threadbare recitals of the elements to plausibly establish the cause of action asserted.

The test for evaluating a claim that a prison failed to provide adequate medical treatment in violation of the Eighth Amendment "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F. 2d 754, 762 (3d Cir. 1979). "[A]llegations amounting only to malpractice or mere negligence have consistently been held not to raise issues of constitutional import." *Litz v. City of Allentown*, 896 F. Supp. 1401, 1409 (E.D. Pa. 1995). Indeed, "[w]here the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Dimitris v. Lancaster Cnty. Prison Bd.*, No. 00-cv-3739, 2002 WL 32348283, at *6 (E.D. Pa. June 7, 2002) (quoting *Norris v. Frame*, 585 F. 2d 1183, 1186 (3d Cir. 1978)); *see also McClain v. Kale*, No. 1:10-cv-0035, 2013 WL 5272816, at *9 (M.D. Pa. Sept. 17, 2013) ("deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate"). Plaintiffs' allegations simply fail to plausibly establish that Defendants engaged in deliberate indifference to a serious medical need. In fact, the complaint establishes that Palakovic was on the mental health roster, he was being treated with medication for his diagnosed mental illnesses, and he was receiving visits from the prisons mental health staff.

Accordingly, because Plaintiffs have failed to establish a plausible claim for relief under the Eighth Amendment, the Court will grant Defendants' motions to dismiss Count II of the complaint.

**B. Count III – Discrimination on the Basis of Disability**

In Count III of the complaint (ECF No. 1 ¶¶ 143-145), Plaintiffs allege that Defendants violated Palakovic's rights under the ADA by denying him access to services, programs, and activities available at SCI Cresson because of his serious mental illness. Plaintiffs aver that Defendants refused to "make a reasonable accommodation that would enable [Palakovic] to have access to services, programs, and activities available to prisoners without serious mental illness." (*Id.* ¶ 145). As an initial matter, Plaintiffs concede that Count III should be dismissed as to Defendants Dr. Rathore and MHM, Inc. (*See* ECF No. 18 at 1, 14). As such, the Court will dismiss Count III as to the Mental Health Defendants, Dr. Rathore and MHM, Inc., with prejudice.

The Corrections Defendants argue that an ADA claim is not cognizable against the Corrections Defendants in their personal capacities. (*See* ECF No. 11 at 7). The law is well settled that individuals, sued in their official capacities, are not "public entities" under the ADA and are not subject to liability under Title II of the ADA. *See, e.g., Emerson v. Thiel College,* 296 F. 3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under Titles I or II of the ADA); *O'Donnell v. Pennsylvania Dep't of Corr.*, 790 F. Supp. 2d 289, 308 (M.D. Pa. 2011). Accordingly, Plaintiffs' ADA claim against the Defendants in their individual capacities is barred as a matter of law and will be dismissed. However, Plaintiffs argue that the ADA claims are properly asserted against the Defendants in their official capacities.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to services, programs, and activities provided within correctional institutions. *See Chisolm v. McManimon*, 275 F. 3d 315, 325 (3d Cir. 2001) (citing *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998)). To state a claim for relief under Title II of the ADA, a plaintiff must allege that (1) he is a qualified individual, (2) with a disability, and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity, (4) by reason of his disability. *Johnson v. Inglebread*, No. 13-cv-262, 2013 WL 3830504, at *4 (W.D. Pa. July 24, 2013). The Court will focus its analysis on the third and fourth elements.

In the complaint, Plaintiffs allege that "[p]lacing [Palakovic] in the RHU deprived him of access to services, program opportunities, and other activities accorded to general population prisoners." (ECF No. 1 ¶¶ 49, 76-81). Further, the complaint alleges that Defendants placed Palakovic "in solitary confinement in the RHU on account of his serious mental illness." (*Id.* ¶ 70). Such allegations fail to state a plausible claim that Palakovic was excluded from participation in a service, program, or activity of the prison by reason of his disability in violation of Title II of the ADA. Plaintiffs do not allege what "services, program opportunities, and other activities" Palakovic was deprived of. Similarly, the complaint contains no factual averments concerning how Palakovic's placement in the RHU was in any way related to his disability. Instead, the complaint simply alleges that Palakovic "spent multiple 30-day stings in solitary confinement in the RHU" and that "[f]our days before his death, [Palakovic] was again placed in solitary

confinement for a minor rules violation that was eligible for information resolution instead of disciplinary time." (*Id.* ¶¶ 29, 45).[5]  This Court has previously considered identical allegations to those advanced in the complaint *sub judice*:

> The fact that a prisoner possesses a qualifying disability of mental illness under the ADA . . . does not mean that any discipline imposed upon him must be a measured imposition of discipline in light of his disability. This is because the discipline of RHU housing imposed on the Decedent does not equate with denying benefits to the Decedent.  *See Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1231-1232 (S.D. N.Y. 2003) (finding that placement of mentally ill inmates within "keeplock isolation" did not equate to a denial of services under the ADA in the absence of an allegation of such denial; mentally ill inmates were not disparately treated from other inmates who were also a "danger to [themselves] or others").  . . .  [T]he placement of Decedent in the RHU did not result from the hearing officer's discrimination against prisoners with mental illness, rather, it resulted from the "misconduct."  . . .  Any implication in [the complaint] that the Decedent could not be disciplined by being placed in the RHU because it would be detrimental to his mental health and thus violative of the ADA . . . is not denial of a service or program under such statutes.  The Court understands that the Plaintiff's claim under the ADA . . . relates to the proper treatment of the Decedent through the services and programs made available to him in light of his disability.  The Court does not believe the ADA . . . requires housing of disabled inmates in a certain level of confinement, a certain institution, or a certain security level as such assignments are primarily matters of security delegated to the discretion of the individual state correctional departments.

*Scherer v. Pennsylvania Dep't of Corr.*, No. 3:2004-cv-191, 2007 WL 4111412, at *9 (W.D. Pa. Nov. 16, 2007).  In sum, Plaintiffs have failed to allege facts showing that Defendants somehow discriminated against Palakovic on the basis of a disability when they placed

---

[5] The complaint also alleges that "Defendants John Does 1 and 2 failed to take into account the extent that Brandon's behavior was the consequence of serious mental illness."  (ECF No. 1 ¶ 48). However, this allegation is not made against the other Defendants in the case.  Furthermore, the complaint does not allege how Palakovic's behavior resulting in disciplinary action was in any way related to his serious mental illness.

him in the RHU for disciplinary reasons.  *See West v. Varano*, No. 1:10-cv-2637, 2013 WL 4607427, at *9 (M.D. Pa. Aug. 29, 2013); *Green v. Coleman*, No. 2:13-cv-00008, 2013 WL 6185172, at *8 (W.D. Pa. Nov. 26, 2013) *aff'd*, 575 F. App'x 44 (3d Cir. 2014) (dismissing prisoner's ADA claim where there were no specific allegations that plaintiff was being denied access to any benefits, programs, or activities due to any disability).  Accordingly, Plaintiffs' ADA claim against the Defendants will be dismissed.

### C.  Counts IV and V – State Law Claims for Wrongful Death and Survivorship

In Count IV of the complaint (ECF No. 1 ¶¶ 146-151), Plaintiffs assert a claim for wrongful death pursuant to 42 Pa.C.S. § 8301 against all of the Defendants.  In Count V of the complaint (ECF No. 1 ¶¶ 152-154), Plaintiffs assert a survival action pursuant to 20 Pa.C.S. § 3373 and 42 Pa.C.S.  § 8302 against all of the Defendants.  The Corrections Defendants have moved to dismiss both of these state law claims arguing that both claims are barred by sovereign immunity and that Plaintiffs have failed to state a cognizable claim under the relevant statutes.  (ECF No. 11 at 8-11).

As an initial matter, Plaintiffs concede that Counts IV and V should be dismissed as to the following Corrections Defendants:  John Wetzel, Kenneth Cameron, Jamie Boyles, Jamey Luther, Michelle Houser, Morris Houser, and Francis Pirozzola.  (*See* ECF No. 17 at 1, 17).  As such, the Court will dismiss Counts IV and V as to these Department of Corrections Defendants, with prejudice.  Nevertheless, Plaintiffs argue that the wrongful death and survivor claims against Dr. Harrington, and the Mental Health

Defendants—MHM, Inc., and Dr. Rathore—are not barred by sovereign immunity. (*See* ECF No. 17 at 17). The Court need not decide this issue.

Plaintiffs' wrongful death claim and survival action "cannot be brought . . . as claims in-and-of themselves, because an underlying claim . . . is needed for these claims to be cognizant." *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 757 (W.D. Pa. 2011). Accordingly, because the Court dismisses the underlying civil rights claims (Counts I–III), the Court will also grant Defendants' motions to dismiss Plaintiffs' wrongful death claim and survival action, without prejudice, dependent on Plaintiffs' ability to sufficiently plead their underlying constitutional claims in an amended complaint. *See id.*

### D. Leave to Amend

The law is well settled that, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F. 3d 224, 245 (3d Cir. 2008). Likewise, Federal Rule of Civil Procedure 15 embodies a liberal approach to amendment and directs that "leave shall be freely given when justice so requires" unless other factors weigh against such relief. *Dole v. Arco Chemical Co.*, 921 F. 2d 484, 486–87 (3d Cir. 1990). Factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a

claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F. 3d 107, 121 (3d Cir. 2000). A district court may therefore "properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Centifanti v. Nix*, 865 F. 2d 1422, 1431 (3d Cir. 1989); *Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014). In light of these legal principles favoring the opportunity to amend a deficiently pleaded complaint, the Court will grant Plaintiffs leave to amend.

**VI.    Conclusion**

For the reasons stated above, the Court will grant Defendants' motions to dismiss Plaintiffs' complaint, but will grant Plaintiffs leave to amend their complaint.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | |
| as Administrators of the Estate of | ) | |
| BRANDON PALAKOVIC, | ) | |
| | ) | **CIVIL ACTION NO. 3:14-145** |
| Plaintiffs, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| JOHN WETZEL, KENNETH CAMERON, | ) | |
| JAMIE BOYLES, JAMEY LUTHER, | ) | |
| JAMES HARRINGTON, DR. RATHORE, | ) | |
| MICHELLE HOUSER, MORRIS | ) | |
| HOUSER, FRANCIS PIROZZOLA, | ) | |
| JOHN DOE #1, #2, JOHN DOES #3-6, | ) | |
| MHM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 26th day of June 2015, upon consideration of the Defendants'

motions to dismiss (ECF No. 9, 10), and for the reasons set forth in the accompanying

memorandum,

**IT IS HEREBY ORDERED** that Defendants' motions are **GRANTED** and

Plaintiffs' complaint (ECF No. 1) is dismissed as follows:

(1) Count I of the complaint is dismissed as to all Defendants with leave to
amend.

(2) Count II of the complaint is dismissed as to all Defendants with leave to
amend.

(3) Count III of the complaint is dismissed as to Dr. Rathore and MHM, Inc., without leave to amend. Count III of the complaint is dismissed as to the remaining Defendants, in their official capacities, with leave to amend.

(4) Count IV of the complaint is dismissed as to Defendants John Wetzel, Kenneth Cameron, Jamie Boyles, Jamey Luther, Michelle Houser, Morris Houser, and Francis Pirozzola, without leave to amend. Count IV of the complaint is dismissed as to Defendants James Harrington, Dr. Rathore, and MHM, Inc., with leave to amend.

(5) Count V of the complaint is dismissed as to Defendants John Wetzel, Kenneth Cameron, Jamie Boyles, Jamey Luther, Michelle Houser, Morris Houser, and Francis Pirozzola, without leave to amend. Count V of the complaint is dismissed as to Defendants James Harrington, Dr. Rathore, and MHM, Inc., with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiffs are granted 21 days from the date of this order to file an amended complaint.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE