## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | CIVIL ACTION NO. 3:14-145 |
| as Administrators of the Estate of | ) | |
| BRANDON PALAKOVIC, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, KENNETH CAMERON, | ) | |
| JAMIE BOYLES, JAMEY LUTHER, DR. | ) | |
| JAMES HARRINGTON, DR. DALEEP | ) | |
| RATHORE, DR. CAROL EIDSVOOG, | ) | |
| HEARING EXAMINER ROBERT REED, | ) | |
| CORRECTION OFFICER KUSHNER, | ) | |
| SERGEANT DOUS, MHM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This civil rights action arises from the suicide of Brandon Palakovic while he was

incarcerated at the State Correctional Institution at Cresson ("SCI Cresson") and housed

in the prison's Restricted Housing Unit ("RHU").  Plaintiffs—Palakovic's parents and the

administrators of his estate—have asserted various civil rights claims against Defendants,

alleging violations of the Eighth and Fourteenth Amendments to the Constitution and the

Americans with Disabilities Act ("ADA"), as well as state law claims.  Presently before the

Court are Defendants' motions to dismiss (ECF Nos. 24, 32, 39)[1] the amended complaint

---

[1] ECF No. 24 is a motion to dismiss filed by the "Corrections Defendants," including John Wetzel, Kenneth Cameron, Jamie Boyles, Jamey Luther, and James Harrington.  ECF No. 32 is a motion to dismiss filed by Defendants Dr. Daleep Rathore and MHM, Inc.  ECF No. 39 is a motion to dismiss filed by Defendant Dr. Carol Eidsvoog.

pursuant to Federal Rule of Civil Procedure 12(b)(6). Having reviewed the motions and briefs, along with the applicable law, and for the reasons explained below, the Court will **GRANT in part** and **DENY in part** Defendants' motions to dismiss. Plaintiffs will be granted leave to file a second amended complaint.

## II.      Jurisdiction

The Court has jurisdiction over the federal constitutional claims pursuant to 28 U.S.C. § 1331, 1343(a)(3) and (4), and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III.     Background

This case involves the untimely death of Brandon Palakovic, who committed suicide while he was incarcerated at SCI Cresson. The following facts are alleged in the amended complaint, which the Court will accept as true for the sole purpose of deciding the pending motions.

Palakovic was sentenced to serve 16-48 months imprisonment for burglarizing an occupied structure. (ECF No. 22 ¶ 18.) Palakovic arrived at SCI Camp Hill for processing and classification in April 2011. (*Id.* ¶ 19.) At SCI Camp Hill, Palakovic informed mental-health staff that he had attempted suicide and engaged in self harm as recently as August 2010, stated that he experienced periodic thoughts of self harm and suicide, and indicated that he had made plans to kill himself. (*Id.* ¶ 20.) Palakovic was identified as a "suicide

behavior risk." (*Id.*) While at SCI Camp Hill, Palakovic was diagnosed with alcohol dependence, anti-social personality disorder, serious mental-health disorders, and impulse control disorder. (*Id.* ¶ 21.) Mental-health staff classified Palakovic's treatment history as "significant" and recommended follow-up for his suicidal behavior, along with drug and alcohol counseling. (*Id.* ¶¶ 22-24.) These recommendations were not followed, and Palakovic was not provided with a suicide-risk assessment. (*Id.* ¶¶ 23-24.) In April 2011, Palakovic was classified as Stability Rating D, indicating that he had "a substantial disturbance of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or cope with the ordinary demands of life." (*Id.* ¶ 25.) Palakovic's vulnerability to suicide and serious mental illness was acknowledged in his mental-health records, which Defendants Harrington, Rathore, and Eidsvoog reviewed. (*Id.* ¶ 26.)

Palakovic was sent to SCI Cresson in June 2011, at which time he reported feeling depressed, acknowledged having suicidal thoughts, and expressed a wish to die. (*Id.* ¶¶ 27-28.) Defendants Harrington, Rathore, and Eidsvoog were aware of Palakovic's depression, suicidal thoughts, and wish to die. (*Id.* ¶ 29.) They were also aware of Palakovic's depression, alcohol dependence, anxiety disorder, attention deficit hyperactivity disorder, bipolar disorder, panic disorder, impulse-control disorder, anti-social personality disorder, and history of at least three suicide attempts with suicidal ideation. (*Id.* ¶¶ 30, 32.) Despite having this knowledge, Defendants Harrington, Rathore, and Eidsvoog failed to provide mental-health treatment, did not take reasonable measures to prevent Palakovic from engaging in self harm or suicide, failed to perform a comprehensive suicide risk assessment, did not provide counseling or group therapy,

failed to counsel against placing Palakovic in solitary confinement, ignored Palakovic's symptoms of depression and acknowledgement of suicidal ideation, did not properly monitor Palakovic's medications, and only engaged with Palakovic in a "superficial way." (*Id.* ¶¶ 33-39.)

During the thirteen months while he was at SCI Cresson, Palakovic was "repeatedly subjected to solitary confinement via placement in the prison's Restricted Housing Unit (RHU), characterized by extreme deprivations of social interaction and environmental stimulation, abusive staff, and inadequate to non-existent mental health care." (*Id.* ¶ 40 (footnote omitted).) Defendants were aware that prisoners who were vulnerable to suicide were more likely to engage in self harm and suicide attempts when placed in solitary confinement because the majority of incidents involving self harm, suicides, and suicide attempts occurred in the solitary confinement units at SCI Cresson. (*Id.* ¶ 41.) Although the Department of Justice initiated an investigation regarding this issue in December 2011, Defendants took no action to remedy the policies and practices. (*Id.* ¶¶ 42-43.)

According to Plaintiffs, "Defendants created and sustained conditions of solitary confinement in the RHU that subjected Brandon Palakovic to torture, causing him to take his own life." (*Id.* ¶ 44.) Days before his death, Palakovic was placed in solitary confinement for non-violent rules violations. (*Id.* ¶ 46.) Although Defendants Kushner, Dous, and Reed were aware of Palakovic's serious mental illness that contributed to his rule violations, they failed to consult with mental-health staff and to conduct an assessment to determine whether Palakovic presented a security risk sufficient to justify

his placement in solitary confinement.  (*Id.* ¶¶ 48-52.)  On July 16, 2012, Palakovic committed suicide.  (*Id.* ¶ 65.)

Palakovic's parents, as administrators of his estate, commenced this action by filing a five-count complaint on September 8, 2014.  (ECF No. 1.)  On June 26, 2015, the Court granted Defendants' motion to dismiss and granted Plaintiffs leave to amend their complaint.  On August 7, 2015, Plaintiffs filed a nine-count amended complaint.  (ECF No. 22.)  Count I asserts a claim against mental-health personnel for vulnerability to suicide claim in violation of the Eighth and Fourteenth Amendments to the Constitution.[2]  (*Id.* ¶¶ 108-109.)  Count II asserts a claim against Correction-Officer Defendants for vulnerability to suicide claim in violation of the Eighth and Fourteenth Amendments to the Constitution.[3]  (*Id.* ¶¶ 110-113.)  Count III asserts a claim against Supervisory Defendants for vulnerability to suicide claim in violation of the Eighth Amendment to the Constitution.[4]  (*Id.* ¶¶ 114-116.)  Count IV asserts a claim against Supervisory Defendants for failure to train.  (*Id.* ¶¶ 117-119.)  Count V asserts a claim against Defendant MHM, Inc. for vulnerability to suicide claim in violation of the Eighth Amendment to the Constitution.  (*Id.* ¶¶ 120-122.)  Count VI asserts a claim against mental-health personnel for medical neglect.  (*Id.* ¶¶ 123-124.)  Count VII asserts a claim against Defendants

[2] Plaintiffs refer to Defendants Harrington, Rathore, and Eidsvoog as mental-health personnel.  (*Id.* ¶ 109.)

[3] Plaintiffs refer to Defendants Kushner, Dous, Reed, Boyles, and Luther as Correction-Officer Defendants.  (*Id.* ¶¶ 111-113.)

[4] Plaintiffs refer to Defendants Wetzel, Cameron, Boyles, and Luther as Supervisory Defendants.  (*Id.* ¶¶ 115-116.)

Boyles, Luther, Reed, Kushner, Dous, Harrington, Wetzel, and Cameron for discrimination on the basis of disability. (*Id.* ¶¶ 125-128.) Count VIII asserts a claim against Defendants Harrington, Rathore, Eidsvoog, and MHM, Inc. for wrongful death. (*Id.* ¶¶ 129-134.) Count IX asserts a survival action against Defendants Harrington, Rathore, Eidsvoog, and MHM, Inc. (*Id.* ¶¶ 135-137.)

Defendants now move to dismiss the amended complaint. (ECF Nos. 24, 32, 39.) The parties have fully briefed the Court on the pending motions, (*see* ECF Nos. 25, 31, 33, 36, 40, 41), and this matter is now ripe for adjudication.

## IV.    Standard of Review

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See id.* at 210. Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "'plausible claim for relief.'" *Id.*

at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "'detailed factual allegations.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has pleaded a "plausible claim for relief" is a "context-specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## V. Discussion

The Corrections Defendants have filed a motion to dismiss the amended complaint, arguing that Plaintiffs have failed to state cognizable Eighth and Fourteenth Amendment claims arising from Palakovic's suicide, that Plaintiffs' failure-to-train and failure-to-supervise claims are insufficient, that Plaintiffs' Eighth Amendment claims must be dismissed based upon misconduct reports that were issued to Palakovic, that Plaintiffs' ADA claim against the Corrections Defendants in their official capacities must be dismissed because the relief sought is not cognizable as a matter of law, that Plaintiffs' state-law claims for wrongful death and survivorship are barred by sovereign immunity, and that Plaintiffs have failed to state a claim under the wrongful death and survival acts. (ECF No. 25.) In response, Plaintiffs "concede that there is no damages remedy available under the ADA, and therefore voluntarily withdraw this claim." (ECF No. 31 at 15.) However, Plaintiffs argue that the amended complaint states cognizable Eighth Amendment claims against Corrections Defendants, Supervisory Defendants, and prison-guard Defendants, and that Defendant Harrington is not immune from violations of Pennsylvania law.

The Mental Health Defendants have filed a partial motion to dismiss the amended complaint, arguing that Plaintiffs have failed to establish that Defendants acted with deliberate indifference to support Plaintiffs' Eighth and Fourteenth Amendment claims. (ECF No. 33.) In response, Plaintiffs contend that the amended complaint adequately alleges facts supporting cognizable Eighth Amendment claims for deliberate indifference to conditions of confinement and serious medical needs. (ECF No. 36.)

Defendant Eidsvoog has also filed a motion to dismiss, arguing that Plaintiffs' claims are barred by the statute of limitations and, in the alternative, that Plaintiffs have failed to establish that she acted with deliberate indifference to support Plaintiffs' Eighth Amendment claims.  (ECF No. 40.)  In response, Plaintiffs assert that their claims are not barred by the statute of limitations because their amended complaint relates back to the initial complaint and that the amended complaint adequately alleges facts supporting cognizable Eighth Amendment claims for deliberate indifference to conditions of confinement and serious medical needs.  (ECF No. 41.)

### A.  Counts I, II, III, IV, and V – Eighth and Fourteenth Amendment Claims

In Counts I, II, III, IV, and V of the amended complaint, Plaintiffs allege violations of Palakovic's Eighth and Fourteenth Amendment rights.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  To state a claim under the Eighth Amendment, Plaintiffs must establish that Defendants acted with deliberate indifference to Palakovic.  *See Tatsch-Corbin v. Feathers*, 561 F. Supp. 2d 538, 543 (W.D. Pa. 2008).  In the context of prison suicide cases, "'if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability.'" *Wargo v. Schuylkill Cnty.*, 348 F. App'x 756, 759 (3d Cir. 2009) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 669 (3d Cir. 1988)); *see also Clentscale v. Beard*, No. 07-CV-307, 2008 U.S. Dist. LEXIS 114435, at *5 (W.D. Pa. July 10, 2008).  The Supreme Court has instructed that deliberate indifference occurs when a prison official "knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

This Court has previously summarized the deliberate indifference standard in prison suicide cases as follows:

> "[A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991). In order to establish liability, Plaintiffs must prove that [Defendants] "[knew] of and disregard[ed] an excessive risk to the inmate's health or safety." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiffs must show that [Defendants were] "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that she drew] the inference." *Natale*, 318 F.3d at 582; *Farmer*, 511 U.S. at 837. A factfinder may determine the actor's knowledge through "circumstantial evidence" or "may conclude that [an actor] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

*Tatsch-Corbin*, 561 F. Supp. 2d at 543-44.

Plaintiffs have asserted distinct, though related, claims under the Eighth and Fourteenth Amendments. First, Plaintiffs assert "vulnerability to suicide" claims. Second, Plaintiffs assert a claim alleging failure to train. The legal principles set forth above apply to these claims. The Court will separately evaluate each claim under this Circuit's deliberate indifference test, as stated above.

### 1. Counts I, II, III, and V – Vulnerability to Suicide Claims

In their amended complaint, Plaintiffs assert four claims for vulnerability to suicide. In Count I (ECF No. 22 ¶¶ 108-109), Plaintiffs allege that "mental health personnel" Defendants Harrington, Rathore, and Eidsvoog failed to take reasonable measures to prevent Palakovic from committing suicide by failing to perform risk assessments, provide counseling, conduct interviews in clinically appropriate settings, and visit Palakovic with sufficient frequency. In Count II (*id.* ¶¶ 110-113), Plaintiffs allege that "Correction Officer" Defendants Kushner, Dous, Reed, Boyles, and Luther failed to take reasonable measures to prevent Palakovic from committing suicide by failing to consult with mental health staff before placing him in solitary confinement, develop a plan to assist Palakovic in following the rules, and limit the amount of time Palakovic spent in solitary confinement. In Count III (*id.* ¶¶ 114-116), Plaintiffs allege that "supervisory" Defendants Wetzel, Cameron, Boyles, and Luther failed to take reasonable measures to prevent Palakovic from committing suicide by authorizing, condoning, implementing, and acquiescing in policies and practices that were deliberately indifferent to prisoners who were vulnerable to suicide. In Count V (*id.* ¶¶ 120-122), Plaintiffs allege that Defendant MHM, Inc. failed to take reasonable measures to prevent Palakovic from committing suicide by authorizing, condoning, implementing, and acquiescing in policies and practices that were deliberately indifferent to prisoners who were vulnerable to suicide.

Initially, this Court notes that this case involves a prison suicide and that the "vulnerability to suicide" standard used by courts in this Circuit applies to Plaintiffs'

allegations.  As detailed above, the law concerning the standard of liability to be applied in prison suicide cases is well-settled in this Circuit.  Importantly, the Third Circuit has held:

> [I]f [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability.  Thus, a plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability.

*Colburn*, 946 F.2d at 1023 (citations and quotations omitted).  Here, Plaintiffs have not alleged facts sufficient to establish any of these elements to state a plausible claim for relief.

First, Plaintiffs have failed to allege facts showing that Palakovic had a particular vulnerability to suicide.  The Third Circuit has explained that a particular vulnerability to suicide means that "there must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."  *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005); *see also Estate of Puza v. Carbon Cnty.*, 586 F. Supp. 2d 271, 277 (M.D. Pa. 2007).  In comparison to their first complaint, Plaintiffs have included additional allegations regarding Palakovic's vulnerability to suicide in their amended complaint.  Nonetheless, Plaintiffs have failed to include factual allegations that there was a strong likelihood that self-inflicted harm would occur.  Specifically, Plaintiffs allege that personnel at SCI Camp Hill identified Palakovic as a "suicide behavior risk" in April 2011 after he stated that he had attempted suicide in 2010, engaged in self-harm, experienced periodic thoughts of

self-harm, and made plans to kill himself. (ECF No. 22 ¶ 19-20.) Palakovic was diagnosed with alcohol dependence, anti-social personality disorder, and impulse control disorder in May 2011. (*Id.* ¶ 21.) In April 2011, Palakovic was classified as "Stability Rating D," meaning that he had "a substantial disturbance of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or cope with the ordinary demands of life. (*Id.* ¶ 25.) While he was confined at SCI Cresson between June 2011 and July 2012, Palakovic reported feeling depressed and sad, acknowledged having suicidal thoughts, and expressed a wish to die. (*Id.* ¶ 28.)

Because Plaintiffs' allegations do not establish a strong likelihood that Palakovic would inflict self-harm, they are insufficient. *Compare Hinton v. United States*, No. 4:14-CV-854, 2015 U.S. Dist. LEXIS 20455, at *13 (M.D. Pa. Feb. 20, 2015) (concluding that the plaintiff failed to satisfy the first prong of *Colburn* because she failed to allege facts that the decedent, who had attempted to kill himself three times over the period of his incarceration, was vulnerable to suicide in the timeframe before his death); *Ponzini v. Monroe County*, 897 F. Supp. 2d 282, 293 (M.D. Pa. 2012) (holding that the plaintiffs' allegations that the decedent "took Paxil and Trazodone on a daily basis" and was "noted to have psychological issues which included . . . depression and the conditions that are associated with major depression" were insufficient to satisfy the first prong of *Colburn*); *and Litz v. City of Allentown*, 896 F. Supp. 1401, 1410 (E.D. Pa. 1995) (collecting cases discussing allegations that are sufficient to establish a vulnerability to suicide), *with Zheng v. Palakovich*, No. 4:09-CV-1028, 2010 U.S. Dist. LEXIS 98296, at *11 (M.D. Pa. Sept. 20, 2010) (holding that sufficient facts had been pled where the decedent had requested

psychiatric help on multiple occasions and stated in his requests that he was afraid that he would hurt himself); *Finney v. Palakovich*, No. 4:09-CV-1751, 2010 U.S. Dist. LEXIS 74284, at *12-13 (M.D. Pa. July 23, 2010) (holding that sufficient facts had been pled where the decedent was in and out of psychiatric care nearly every month from June 2007 to December 2007, tried to hurt himself with a razor and had a plan to hang himself with his bed sheets, and was put on a fifteen-minute observation when released from psychiatric care because he posed a danger to himself); *Tatsch-Corbin*, 561 F. Supp. 2d at 544 (holding that sufficient facts had been pled where the decedent "had made various threats to kill himself" and "had a documented history of attempted suicide and psychiatric hospitalization").

Likewise, Plaintiffs have not alleged facts showing that Defendants knew or should have known about Palakovic's particular vulnerability to suicide. Knowledge of an inmate's particular vulnerability to suicide can be established through psychiatric history—"Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Colburn*, 946 F.2d at 1025 n.1; *Tatsch-Corbin*, 561 F. Supp. 2d at 544. The Court again recognizes that in comparison to their first complaint, Plaintiffs have included additional allegations regarding Defendants' knowledge of Palakovic's vulnerability to suicide in their amended complaint. Nonetheless, Plaintiffs' allegations are conclusory and do not allege facts showing that Defendants knew or should have known about Palakovic's particular vulnerability to suicide. Specifically, Plaintiffs only generally allege that Defendants

"were aware of" or "were familiar with" Palakovic's medical history, vulnerability to suicide, and his nickname of "Suicide." (*See* ECF No. 22 ¶¶ 26, 29-30, 32, 48-50, 57.) Several of Plaintiffs' allegations are prefaced with, "[u]pon information and belief." (*Id.* ¶¶ 49-50, 57.) Such allegations fail to show that Defendants "*had actual knowledge* of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Colburn*, 946 F.2d at 1025 n.1 (emphasis added). Accordingly, Plaintiffs' amended complaint fails to satisfy the second prong of *Colburn*. *See, e.g., Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1115-16 (3d Cir. 1988) (concluding that the plaintiffs did not allege actual knowledge of the decedent's suicidal tendencies because although prison officials should have known that the decedent's scars on his wrists were "suicide hesitation cuts," their failure to recognize them as such amounted only to negligence); *Hinton*, 2015 U.S. Dist. LEXIS 20455, at *14 (finding the plaintiff's allegations that the defendant had received reports of the decedent's medical trips were insufficient to place the defendant on notice that the decedent was depressed or a suicide risk); *Mullin v. Balicki*, No. 11-CV-247, 2013 U.S. Dist. LEXIS 156883, at *39 (D.N.J. Nov. 1, 2013) (dismissing complaint because it "fail[ed] to point to any actions of the decedent that would have alerted [the defendants] to the fact that he was a suicide risk").

Finally, the amended complaint fails to allege facts showing that Defendants were deliberately indifferent to a particular vulnerability to suicide. Deliberate indifference in the prison-suicide context requires that Defendants "knew of a strong likelihood of suicide and disregarded that risk by failing to take reasonable measures to address it." *Estate of Puza*, 586 F. Supp. 2d at 277. Analysis of this factor requires a subjective

examination rather than an objective one. *Id*. In other words, "the court must examine what the prison officials were actually aware of as opposed to what they should have been aware of." *Id*. at 277-78 (citing *Woloszyn*, 396 F.3d at 321). A complaint may allege that a defendant has exhibited deliberate indifference to a prisoner's vulnerability for suicide in one of several ways. For example, a defendant might have taken affirmative action directly leading to the prisoner's suicide. Allegations of such direct action are sufficient to withstand dismissal. *See Freedman*, 853 F.2d at 1115. Likewise, a complaint will withstand a Rule 12(b)(6) challenge where it alleges that a defendant actually knew of the suicidal tendencies of a particular prisoner and ignored the responsibility to take reasonable precautions. *Id*. Finally, "when the factual scenario presented by plaintiff suggests that defendants should have known that the prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Id*. Here, Plaintiffs have failed to allege facts showing any of these scenarios.

As discussed above, the amended complaint does not include allegations to sufficiently establish that Palakovic had a particular vulnerability to suicide or that Defendants knew or should have known about Palakovic's vulnerability to suicide. The conclusory allegations in the amended complaint that Defendants "were aware of" or "were familiar with" Palakovic's medical history, vulnerability to suicide, and his nickname of "Suicide" are not sufficient to establish that Defendants were aware of any risk of suicide. Similarly, Plaintiffs' allegations regarding a Department of Justice investigation that was launched eight months prior to Palakovic's death are insufficient.

(ECF No. 22 ¶¶ 67, 70.) Plaintiffs allege that "[i]t was common knowledge amongst prison staff at SCI Cresson that the DOJ was investigating the prison for warehousing mentally ill and intellectually disabled prisoners in solitary confinement. (*Id.* ¶ 68.) Plaintiffs include no allegations indicating how this investigation shows that Defendants knew or should have known about Palakovic's vulnerability to suicide. *See Ferencz v. Medlock*, No. 11-CV-1130, 2014 U.S. Dist. LEXIS 92173, at *10 (W.D. Pa. July 8, 2014) ("The risk [of suicide] must be based on individual symptoms rather than group characteristics."); *see also Woloszyn*, 396 F.3d at 320 ("Even where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood.") (quoting *Colburn*, 946 F.2d at 1024); *Ponzini*, 897 F. Supp. 2d at 293 (dismissing claim because although the decedent "may belong to a 'category of persons more likely to commit suicide, that is not enough to establish an individual risk.'") (quoting *Wargo*, 348 F. App'x at 761) .

Plaintiffs have not alleged sufficient facts showing that any of the Defendants knew about Palakovic's particular vulnerability to suicide. Plaintiffs' generalized allegations concerning mentally ill prisoners placed in solitary confinement are insufficient to state a plausible claim for relief under the Eighth Amendment. Accordingly, Defendants' motions to dismiss Counts I, II, III, and V will be granted.

### 2. Count IV – Failure to Train

In Count IV of the amended complaint (ECF No. 22 ¶¶ 117-119), Plaintiffs allege that Defendants Wetzel, Cameron, Boyles, and Luther violated Palakovic's Eighth

Amendment rights by failing to train Department of Corrections' personnel regarding the management of prisoners with serious mental illnesses and those who were vulnerable to suicide, failing to consult with staff prior to placing prisoners with mental-health issues in isolation, and acquiescing in a long-standing practice of failing to train personnel in suicide prevention.

In assessing failure-to-train claims, the Third Circuit follows a four-part test based upon *City of Canton v. Harris*, 489 U.S. 378 (1989). The plaintiff must identify a specific practice or procedure that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk existed; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the supervisor's failure to employ the practice or procedure. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133-34 (3d Cir. 2001). This four-part test may be satisfied by showing either that the supervisor failed to adequately respond to a pattern of past occurrences of injuries or that the risk of constitutionally cognizable harm "was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support finding that the four-part test is met." *Beers-Capitol*, 256 F.3d at 136-37 (quoting *Sample*, 885 F.2d at 1118. A supervisor may not be held liable unless "the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending

subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997)).

Plaintiffs' amended complaint does not identify any of SCI Cresson's existing policies or practices and also fails to allege that the existing policies or practices created an unreasonable risk of an Eighth Amendment injury. Moreover, Plaintiffs' amended complaint does not show that Defendants Wetzel, Cameron, Boyles, and Luther had knowledge of a prior pattern of similar incidents and were indifferent to the unreasonable risk. The Court must therefore dismiss Count IV of Plaintiff's amended complaint against Defendants Wetzel, Cameron, Boyles, and Luther. *See, e.g., Arias v. Danberg*, No. 1:15-CV-197, 2015 U.S. Dist. LEXIS 169275, at *17-18 (D. Del. Dec. 18, 2015) (dismissing failure-to-train claim because the plaintiffs "have not demonstrated that the policies at issue in this case are deficient"); *Townsley v. W. Brandywine Twp.*, No. 06-CV-758, 2006 U.S. Dist. LEXIS 51096, at *9 (E.D. Pa. July 24, 2006) (dismissing failure-to-train claim because the plaintiff failed to allege that the defendants had any contemporaneous knowledge of a prior pattern of similar incidences); *Ward v. Taylor*, No. 04-CV-1391, 2006 U.S. Dist. LEXIS 14135, at *19 (D. Del. Mar. 30, 2006) (dismissing failure-to-train claim because the plaintiff failed to meet the prongs of the *Sample* test).

## B. Count VI – Medical Neglect

In Count VI of the amended complaint (ECF No. 22 ¶¶ 123-124), Plaintiffs assert a medical neglect claim against Defendants Harrington, Rathore, and Eidsvoog in their individual capacities. Defendant Eidsvoog has moved to dismiss the claim, arguing that

Plaintiffs' claims are barred by the statute of limitations and, in the alternative, that Plaintiffs have failed to establish that she acted with deliberate indifference to support Plaintiffs' Eighth Amendment claims. (ECF No. 40.) Defendants Harrington and Rathore have also moved to dismiss the claim, arguing that Plaintiffs have failed to establish that they acted with deliberate indifference. (ECF No. 25.)

Initially, the Court notes that Defendants Harrington, Rathore, and Eidsvoog have construed Plaintiffs' "medical neglect" claim as a deliberate indifference claim arising under the Eighth Amendment. (*See* ECF Nos. 25, 40.) In Count VI of their amended complaint, however, Plaintiffs do not reference the Eighth Amendment. (ECF No. 22 ¶¶ 123-124.) Rather, Plaintiffs allege the following:

> Defendants Harrington, Rathore, and Eidsvoog violated [Palakovic's] rights under Pennsylvania state law by their negligent conduct in regard to [his] vulnerability to suicide and related mental health care needs.
>
> Defendants Harrington, Rathore, and Eidsvoog failed to provide mental health care in accord with professional standards, causing injury and death to [Palakovic].
>
> Despite their knowledge of [Palakovic's] history of suicide attempts, his mental health diagnoses and history that made him vulnerable to depression and suicide ideation, and his persistent symptoms of withdrawal, depression, and a wish to die, Defendants Harrington, Rathore, and Eidsvoog breached their duty to [Palakovic] by neglecting [Palakovic's] mental health care needs and failing to take reasonable measures to prevent [Palakovic] from engaging in self-harm or suicide, including but not limited to performing a comprehensive suicide risk assessment; providing psychological counseling; providing drug and alcohol counseling as recommended; providing group or vocational therapy; performing interviews in clinically appropriate settings rather than through the cell door slot in the solitary confinement unit; seeing [Palakovic] with sufficient frequency as indicated in the clinical record and according to his need for treatment; or informing, advising, or otherwise counseling other SCI Cresson staff against placing [Palakovic] in conditions of solitary confinement that these Defendants knew would

place [Palakovic] at an unacceptable risk that he would decompensate and kill himself again [sic].

Defendants Harrington, Rathore, and Eidsvoog were aware that [Palakovic's] mental health conditions were going to continually land him in solitary confinement unless there was an intervention on his behalf and that such placement in solitary confinement carried with it the strong likelihood that [Palakovic] would attempt to harm or kill himself.

Despite this knowledge, Defendants were negligent in regard to [Palakovic's] vulnerability to suicide and other serious mental health care needs, resulting in his death.

(*Id.* ¶ 124.)  In their brief opposing Defendants' motion to dismiss, Plaintiffs state that they have filed "a medical neglect claim based on allegations that a licensed professional deviated from an acceptable professional standard."  (ECF No. 31 at 16 (internal quotations omitted).)  Plaintiffs further note that they have filed a certificate of merit in support of their claim.  (*Id.*; ECF No. 30.)  Because Plaintiffs have not alleged a claim for deliberate indifference under the Eighth Amendment, the Court need not address Defendants' arguments regarding the Eighth Amendment.

Plaintiffs' claim for "medical neglect" is a claim for negligence, or medical malpractice, against Defendants Harrington, Rathore, and Eidsvoog that arises under Pennsylvania law.  Claims against prison medical staff for negligence, or medical malpractice, are permissible under Pennsylvania law.  *See, e.g., Williams v. Syed*, 782 A.2d 1090, 1095-96 (Pa. Commw. Ct. 2001) (finding that an inmate had not failed to allege a claim for negligence against a medical director providing services for SCI Pittsburgh and a health care administrator at SCI Pittsburgh).  Specifically, sovereign immunity bars claims against the Commonwealth, its agencies, and its employees acting within the scope of their duties.  *See* 1 Pa.C.S. § 2310.  However, Pennsylvania law waives sovereign immunity

in nine limited circumstances. 42 Pa.C.S. § 8522(b). One exception is for "[m]edical-professional liability," which includes "the [a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." *Id.* § 8522(b)(2). Accordingly, claims of negligence against health care employees of Commonwealth institutions, such as a prison, may proceed under Pennsylvania law. *See id.*; *see also Williams*, 782 A.2d at 1095-96; *Mattis v. Pa. Dep't of Corr.*, No. 1929 C.D. 2013, 2014 Pa. Commw. Unpub. LEXIS 299, at *15-16 (Pa. Commw. Ct. 2014) (explaining that healthcare professionals fall within the medical-professional exception to sovereign immunity); *McCool v. Dep't of Corr. of Pa.*, 984 A.2d 565, 570 (Pa. Commw. Ct. 2009) (stating that the plaintiff may have filed a medical-professional liability claim against the prison's doctor).

While claims of negligence may be asserted against health care employees of Commonwealth institutions, a plaintiff must satisfy Pennsylvania's statute of limitations requirements. In Pennsylvania, a two-year limitation period is applicable to claims of negligence. *See* 42 Pa.C.S. § 5524. In their original complaint, which was filed on July 8, 2014, Plaintiffs alleged claims for deliberate indifference, discrimination on the basis of disability, wrongful death, and survival. (*See* ECF No. 1.) In their amended complaint, Plaintiffs included, for the first time, a claim for "medical neglect." (*See* ECF No. 22 ¶¶ 123-124.) Although Plaintiffs filed their amended complaint on August 7, 2015, over four years after Palakovic committed suicide, their claim is not time barred. Federal Rule of Civil Procedure 15(c) provides that an amendment to a complaint relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of

the conduct, transaction or occurrence set out — or attempted to be set out — in the original pleading." FED. R. CIV. P. 15(c)(1)(B).  Here, Plaintiffs' claim in Count VI directly relates to the same set of facts set forth in the original complaint.  Thus, for purposes of the statute of limitations, Count VI relates back to the filing of the original complaint.  *See Doe v. Allegheny County*, No. 10-CV-1761, 2013 U.S. Dist. LEXIS 43096, at *42 (W.D. Pa. Mar. 27, 2013) (finding that the plaintiff's negligence claim against Allegheny Correctional Health Services, Inc. related back to the original complaint because "[c]ourts also allow relation back when the new claim is based on the same facts as the original pleading and only changes the legal theory") (internal quotations omitted).

Having discussed the issue of statute of limitations generally with reference to Plaintiffs' claim, the Court will next address specifically Defendant Eidsvoog's argument that Plaintiffs' claims against her are barred by the statute of limitations.  Defendant Eidsvoog argues that she was not identified as a defendant in this action until August 7, 2015, when Plaintiffs filed their amended complaint.  (ECF No. 40 at 4.)  Because the amended complaint was filed more than one year after the expiration of the statute of limitations, Defendant Eidsvoog asserts that Plaintiffs' claims against her must be dismissed.  (*Id.*)  Defendant Eidsvoog further contends that Plaintiffs' claims against her do not "relate back" to Plaintiffs' original complaint because she was not given notice of Plaintiffs' claims within the statute of limitations and because she had no reason to believe that she would have been named as a defendant in Plaintiffs' original complaint.  (*Id.*)

As explained above, the statute of limitations applicable to Plaintiffs' claim for medical neglect is two years.  Here, Palakovic committed suicide on July 16, 2012, and

passed away on July 17, 2012.  (ECF No. 22 ¶ 65.)  Plaintiffs did not include Defendant

Eidsvoog as a defendant in this action until August, 7, 2015, when they filed an amended

complaint, by which time the applicable two-year statute of limitations had expired.  (ECF

No. 1; ECF No. 22.)

Federal Rule of Civil Procedure 15 provides, in relevant part:

> (c) Relation Back of Amendments.
>> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>>> (A) the law that provides the applicable statute of limitations allows relation back;
>>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).  Pursuant to Rule 15(c)(1)(C), two requirements must be met before

relation back to the original complaint is permitted.  First, the party sought to be added

must have received sufficient notice of the institution of the action to prevent prejudice to

the added party.  *Singletary*, 266 F.3d at 189.  Second, the party sought to be added knew

or should have known that, but for a mistake, the plaintiff would have named him or her

in the original complaint.  *Id.*

Rule 15(c)(1)(C)(i) "cognizes two means of imputing the notice received by the original defendants to the party sought to be added: (i) the existence of a shared attorney between the original and proposed new defendant; and (ii) an identity of interest between these two parties." *Id.* Here, notice is imputed to Defendant Eidsvoog because she shares an attorney with Defendants Rathore and MHM, Inc. (*See* ECF No. 6; ECF No. 28.) Defendants Rathore and MHM, Inc. were included as defendants in Plaintiffs' original complaint, which was filed before the statute of limitations expired. (*See* ECF No. 1.) Additionally, Defendant Eidsvoog shares "an identity of interest" with Defendant Rathore, who is another psychiatrist employed at SCI Cresson, and Defendant MHM, Inc., which is Defendant Eidsvoog's employer and an entity that provides psychiatric services at SCI Cresson. (*See* ECF No. 1 ¶¶ 12, 20; ECF No. 22 ¶ 13.) Because all three defendants were responsible for providing psychiatric services at SCI Cresson, where Palakovic was incarcerated, Defendant Eidsvoog shares an identity of interest with Defendant Rathore and Defendant MHM, Inc. Thus, Defendant Eidsvoog will not be prejudiced in defending on the merits of this action. Not only does Defendant Eidsvoog share an attorney and an identity of interest with Defendant Rathore and Defendant MHM, Inc., but at this early stage of the proceedings, Defendant Eidsvoog will suffer no prejudice.

Regarding Rule 15(c)(1)(C)(ii), Defendant Eidsvoog knew or should have known that this action would be filed against her. "In evaluating the notice requirements, the focus is on what the defendant to be added knew or should have known, not what the plaintiffs knew or when they took action to move to amend. The knowledge of the amending party is not a factor in a Rule 15(c)(1)(C) analysis." *Siciliano v. City of*

*Philadelphia*, No. 09-CV-5270, 2010 U.S. Dist. LEXIS 78658, at *6 (E.D. Pa. Aug. 2, 2010); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010) ("We hold that relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."). As explained above, Defendant Eidsvoog shares an attorney and an identity of interest with Defendant Rathore and Defendant MHM, Inc. She therefore knew or should have known that this action would be filed against her. *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1457 (E.D. Pa. 1992) ("[C]ourts have generally held that the mistake condition is satisfied when the original party and added party have a close identity of interests.") (internal quotations and alterations omitted); *see also Dean v. Deptford Twp.*, No. 13-CV-5197, 2015 U.S. Dist. LEXIS 77574, at *14 (D.N.J. June 16, 2015) ("Because Plaintiff has not met the notice prong of the relation back test, the Court does not need to reach the third prong.") (citing *Singletary*, 266 F.3d at 201); *Moreno v. City of Pittsburgh*, No. 12-CV-615, 2013 U.S. Dist. LEXIS 101754, at *14-15 n.8 (W.D. Pa. July 22, 2013) (concluding that the defendants "received constructive notice through the shared attorney method"); *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (finding relation back because the defendants shared an attorney).

Next, regarding Plaintiffs' claim for medical neglect, it is well settled that to state a prima facie cause of action for medical malpractice, a plaintiff must allege that: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were the direct result of that

harm." *Williams*, 782 A.2d at 1093. Here, Plaintiffs have alleged sufficient facts in their amended complaint to establish a plausible claim for negligence. Plaintiffs' allegations contained in Count VI, which the Court has discussed above, state that Defendants failed to provide Palakovic with mental health care in accordance with professional standards. (ECF No. 22 ¶ 124.) Plaintiffs further allege that Defendants breached their duty to Palakovic by neglecting his mental health needs, which caused his death. (*Id.*) Because Plaintiffs' allegations sufficiently allege a claim for negligence, the Court will deny Defendants' motion to dismiss Count VI of Plaintiffs' amended complaint.

### C. Count VII – ADA Claim

In Count VII of the amended complaint (ECF No. 22 ¶¶ 125-128), Plaintiffs assert an ADA claim against Defendants Boyles, Luther, Reed, Kushner, Dous, Harrington, Cameron, and Wetzel. The Corrections Defendants have moved to dismiss this claim, arguing that Plaintiffs have failed to state a cognizable claim because they do not seek prospective injunctive relief. (ECF No. 25 at 17-19.) In response, Plaintiffs "concede that there is no damages remedy available under the ADA, and therefore voluntarily withdraw this claim." (ECF No. 31 at 15.) Accordingly, the Court need not address the Corrections Defendants' arguments, and Count VII will be withdrawn from Plaintiffs' amended complaint.

### D. Counts VIII and IX – State Law Claims for Wrongful Death and Survivorship

In Count VIII of the amended complaint (ECF No. 22 ¶¶ 129-134), Plaintiffs assert a claim for wrongful death pursuant to 42 Pa.C.S. § 8301 against Defendants Harrington,

27

Rathore, Eidsvoog, and MHM, Inc.  In Count IX of the amended complaint (*id.* ¶¶ 135-137), Plaintiffs assert a survival action pursuant to 20 Pa.C.S. § 3373 and 42 Pa.C.S. § 8302 against Defendants Harrington, Rathore, Eidsvoog, and MHM, Inc.  Defendants Harrington and Eidsvoog have moved to dismiss both of these state law claims.  (ECF No. 25 at 19-22; ECF No. 40 at 2-5.)  Defendant Harrington argues that Plaintiffs' claims are barred by sovereign immunity and that Plaintiffs have failed to state a cognizable claim under the relevant statutes.  (ECF No. 25 at 19-22.)  Defendant Eidsvoog argues that all of Plaintiffs' claims against her must be dismissed as barred by the statute of limitations. (ECF No. 40 at 2-5.)

        As discussed above, Plaintiffs' claim for medical neglect is a negligence claim against Defendants that is permissible under Pennsylvania law.  *See supra* Part V.B. Additionally, as previously discussed, Plaintiffs' medical neglect claim is not barred by sovereign immunity or by the statute of limitations.  See id.  Accordingly, the Court will deny Defendants' motions to dismiss Counts VIII and IX.  *See, e.g., Thrower v. Pennsylvania*, 873 F. Supp. 2d 651, 658 (W.D. Pa. 2012) (explaining that "sovereign immunity is waived for claims of medical professional liability by acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse, or related health care personnel") (citing 42 Pa.C.S. § 8522(b)(2)).

### E.  Defendants Hearing Examiner Robert Reed, Correction Officer Kushner, and Sergeant Dous

The Court notes that Plaintiffs have filed a claim of deliberate indifference under the Eighth and Fourteenth Amendment against Defendants Hearing Examiner Robert Reed, Correction Officer Kushner, and Sergeant Dous.  (ECF No. 22 ¶¶ 110-113.)  The docket entries in this case reflect that Defendants are unrepresented by counsel.  Because Defendants have not filed a motion to dismiss Plaintiffs' claim, Count II as to Defendants Hearing Examiner Robert Reed, Correction Officer Kushner, and Sergeant Dous remains.

### F.  Leave to Amend

The law is well settled that, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Likewise, Federal Rule of Civil Procedure 15 embodies a liberal approach to amendment and directs that "leave shall be freely given when justice so requires" unless other factors weigh against such relief.  *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  A district court may therefore "properly deny leave to amend where the amendment would not withstand a motion to

dismiss." *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989); *Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014).  In light of these legal principles favoring the opportunity to amend a deficiently pleaded complaint, the Court will grant Plaintiffs leave to amend.

**VI.    Conclusion**

For the reasons stated above, Defendants' motions to dismiss Plaintiffs' amended complaint will be granted in part and denied in part.  The Court will grant Plaintiffs leave to amend their amended complaint.

An appropriate order follows.

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | CIVIL ACTION NO. 3:14-145 |
| as Administrators of the Estate of | ) | |
| BRANDON PALAKOVIC, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, KENNETH CAMERON, | ) | |
| JAMIE BOYLES, JAMEY LUTHER, DR. | ) | |
| JAMES HARRINGTON, DR. DALEEP | ) | |
| RATHORE, DR. CAROL EIDSVOOG, | ) | |
| HEARING EXAMINER ROBERT REED, | ) | |
| CORRECTION OFFICER KUSHNER, | ) | |
| SERGEANT DOUS, MHM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 22nd day of February, 2016, upon consideration of the Defendants' motions to dismiss (ECF Nos. 24, 32, 39), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss Plaintiffs' amended complaint (ECF No. 22) are **GRANTED in part** as follows:

(1) Count I of the amended complaint is dismissed as to all Defendants with leave to amend.

(2) Count II of the amended complaint is dismissed as to Defendants Jamie Boyles and Jamey Luther with leave to amend. Count II of the amended complaint against Defendants Hearing Examiner Robert Reed, Correction Officer Kushner, and Sergeant Dous remains.

(3) Count III of the amended complaint is dismissed as to all Defendants with leave to amend.

(4) Count IV of the amended complaint is dismissed as to all Defendants with leave to amend.

(5) Count V of the amended complaint is dismissed as to all Defendants with leave to amend.

(6) Count VII of the amended complaint is dismissed as to all Defendants without leave to amend.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss Counts VI, VIII, and IX are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted 21 days from the date of this order to file an amended complaint.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**