## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | CIVIL ACTION NO. 3:14-145 |
| as Administrators of the Estate of | ) | |
| BRANDON PALAKOVIC, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, KENNETH CAMERON, | ) | |
| JAMIE BOYLES, JAMEY LUTHER, DR. | ) | |
| JAMES HARRINGTON, DR. DALEEP | ) | |
| RATHORE, DR. CAROL EIDSVOOG, | ) | |
| HEARING EXAMINER ROBERT REED, | ) | |
| CORRECTION OFFICER KUSHNER, | ) | |
| SERGEANT DOUS, MHM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This case arises from the death of a young man, Brandon Palakovic ("Brandon"), while

incarcerated in State Correctional Institute—Cresson ("SCI Cresson") in June, 2011. (ECF No. 82

¶¶ 15, 24, 53.) Pending before the Court are Plaintiffs Darian Palakovic and Renee Palakovic's

(the "Palakovics") Motion to Compel Discovery[1] (ECF No. 128) and Defendants MHM

Correctional Services, Inc. ("MHM Correctional"), Dr. Carol Eidsvoog, and Dr. Daleep Rathore's

(collectively, "MHM") Motion for Protective Order. (ECF No. 133.) The Motions are fully briefed

---

[1] The Palakovics' Motion seeks to compel discovery only from MHM; the motion does not implicate the other Defendants.

(ECF Nos. 129, 131, 132, 134) and ripe for disposition. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** both Motions.

## II. Jurisdiction and Venue

This Court has jurisdiction because the Palakovics' Eighth Amendment claims arise under federal law. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state-law claims in this case because the state law claims form part of the same case or controversy as the federal claims. 28 U.S.C. § 1367(a).

Venue is proper because a substantial portion of the events and occurrences giving rise the claims in this case occurred in the Western District of Pennsylvania.

## III. Procedural Background

The Palakovics initially filed their Complaint on July 8, 2014. (ECF No. 1.) This Court dismissed the Complaint, with leave to file an Amended Complaint on June 26, 2015. (ECF No. 19.) The Palakovics filed their Amended Complaint on August 7, 2015, which this Court dismissed on February 22, 2016. (ECF Nos. 22, 43.) The Palakovics appealed, and the Third Circuit reversed and remanded on April 14, 2017. (*See* ECF Nos. 50, 52, 53.) The Palakovics filed a Second Amended Complaint on July 21, 2017, and a Third Amended Complaint on January 19, 2018. (ECF Nos. 59, 82.) The Third Amended Complaint contained claims against MHM for deliberate indifference, violations of the Eighth Amendment, medical neglect, wrongful death, and survival. (ECF No. 82 ¶¶ 89–121.) The Palakovics filed their Motion to Compel Discovery on August 29, 2019, and MHM filed its Motion for a Protective Order on September 5, 2019. (ECF Nos. 128, 133.)

2

## IV. Factual Background[2]

### A. The Death of Brandon Palakovic

Brandon Palakovic was convicted of burglarizing an occupied structure in Perry County, Pennsylvania and sentenced to 16–48 months in the custody of the Pennsylvania Department of Corrections (the "DOC"). (ECF No. 82 ¶ 15.) Upon entering the DOC's custody, Brandon informed staff at State Correctional Institute—Camp Hill ("SCI Camp Hill") that he had attempted suicide in the past and was experiencing suicidal ideation. (*Id.* ¶ 16–17.) DOC personnel at SCI Camp Hill identified Brandon as a "suicide risk" and recommended counseling and treatment, but Brandon never received a suicide risk assessment. (*Id.* ¶¶ 17, 19–21.) MHM personnel apparently reviewed these records at some point during Brandon's incarceration. (*Id.* ¶ 23.) Shortly after entering the DOC at SCI Camp Hill, the DOC transferred Brandon to SCI Cresson, where he reported further suicidal thoughts and expressed a wish to die. (*Id.* ¶¶ 24–25.) Ultimately, Brandon committed suicide while incarcerated at SCI Cresson. (*Id.* ¶ 53.) MHM employed Dr. Eidsvoog and Dr. Rathore as mental health professionals providing psychiatric care at SCI Cresson and were aware of Brandon's history with mental illness and suicidal thoughts. (*See id.* ¶¶ 28–31.) At some point following Brandon's death, SCI Cresson closed. (*See* ECF No. 128 at 2.)

---

[2] The Court draws the relevant background facts in this case from the Palakovics' Third Amended Complaint (ECF No. 82) and the facts relevant to this discovery dispute from the parties' filings (ECF Nos. 128, 129, 131, 132, 133, 143).

## B. The Discovery Dispute

The Palakovics seek an order compelling MHM to comply with three discovery requests:
(1) an interrogatory requesting MHM to identify all of MHM's policies that "govern[] the
employment" of Dr. Rathore and Dr. Eidsvoog while they worked at SCI Cresson between the
dates of January 1, 2010 and December 31, 2012 (the "Policy List") (ECF No. 128 at 1); (2) produce
all Continuous Quality Improvement ("CQI") "reports, assessments, evaluations, or other CQI-
denominated documents pertaining to SCI Cresson" produced by or for MHM from 2010 to its
closure, as well as any other reviews related to SCI Cresson produced by or for MHM from 2010
to its closure (the "CQI Request") (*id.* at 2); and (3) provide a Rule 30(b)(6) deponent fully able to
testify on the subjects identified in the Palakovics' Rule 30(b)(6) notice of deposition (the "30(b)(6)
Notice"). (*Id.* at 1.)

On June 18, 2019 the Palakovics submitted a Third Request for Production of Documents
to MHM (the "June Request"). (ECF No. 129 at 1.) The Palakovics sought documents relating to
communications between MHM personnel on the subjects of: (1) mental health treatment at SCI
Cresson for prisoners in restrictive housing; (2) self-harm or suicide attempts while in restrictive
housing; (3) MHM's suicide prevention protocol and related materials; (4) policies related to
psychological evaluations of DOC inmates, specifically at SCI Cresson; (5) staffing for mental
health at SCI Cresson; (6) mental health programming at SCI Cresson; (7) investigations and
reports on suicide and suicide prevention at SCI Cresson; and (8) external audits of MHM's
suicide prevention practices at DOC facilities. (*Id.* at 1–2.) MHM did not provide any documents
in response to the Request for Production, and stated that all documents related to SCI Cresson
were the DOC's documents, and that therefore its own policies were not relevant. (*Id.* at 2.)

4

However, at Dr. Eidsvoog's deposition, after being asked about whether MHM had its own internal policies, she answered that they did have policies on the subjects of restraints and medications. (*Id.*)

Also on June 18, 2019, Plaintiffs sent a Second Interrogatory Request to MHM (the "Interrogatory Request"), requesting identification of "all MHM policies" that governed Dr. Rathore and Dr. Eidsvoog's employment while they worked at SCI Cresson over a three year period from 2010 to 2012. (*Id.*) On July 22, and July 23, 2019, the Palakovics' counsel contacted MHM's counsel, seeking a response to the Interrogatory Request. (*Id.* at 2–3.) On July 23, 2019, MHM's counsel replied that she had located an index of policies, but not for the correct time period, and was continuing to search for an index from the correct period. (*Id.* at 3.)

On July 24, 2019, MHM, in response to the Palakovics' Rule 30(b)(6) deposition notice, produced Jennifer Sheptock to testify about MHM's work at SCI Cresson, regarding staffing, patient responsibilities of psychiatric staff, patient interactions, policies and practices regarding MHM's interactions with DOC staff, record keeping policies, and MHM staff's role in suicide prevention. (*Id.*) The 30(b)(6) Notice stated that the deponent was to have knowledge of:

1. The scope of MHM's responsibilities and work at SCI Cresson from January 1, 2010 until its closure, including the following:
    a. Staffing, specifically the total number of staff at any given time as well as the staffing-to-patient ratios.
    b. Patient responsibilities of MHM psychiatrists and other employees
    c. Frequency and circumstances of patient interactions.
    d. Polices, practices, and customs regarding interaction and collaboration with DOC psychology staff.
    e. Record keeping policies and practices.
    f. Role of MHM staff in suicide prevention and assessment of self-harm incidents.

(ECF No. 133-4.) The list of topics that the 30(b)(6) deponent was to testify to was apparently provided to MHM almost three months before the deposition. (*Id.*) Ms. Sheptock testified that she did not know whether MHM engaged in reviews or audits of employee performance at SCI Cresson, whether MHM changed or reviewed any of its policies at SCI Cresson following a Department of Justice investigation into SCI Cresson, or whether MHM engaged in any reviews of suicides or self-harm incidents. (*Id.* at 3–4; ECF No. 133-3 at 26–32.) Ms. Sheptock also testified that MHM's CQI reviews since 2014 include incidents of self-harm, but that she was unaware of CQI procedures prior to 2014, had not reviewed any CQI documents from SCI Cresson, and was unaware of who would have such information. (ECF No. 128 at 4; ECF No. 133-3 at 31–32.) As a result of these responses, the Palakovics' counsel stated that Ms. Sheptock was not sufficiently prepared or able to testify for MHM as a Rule 30(b)(6) deponent and terminated the deposition. (ECF No. 128 at 4; ECF No. 133-3 at 38:2–43:24.)

On July 25, 2019, the Palakovics submitted a request for production of documents (the "CQI Request") to MHM, essentially seeking all CQI-related documents connected to SCI Cresson from 2010 until its closure, as well as any review related to SCI Cresson produced by or for MHM. (ECF No. 128 at 4.) The CQI Request asked MHM to provide:

1. All Continual (or "Continuous") Quality Improvement (CQI) reports, assessments, evaluations, or other CQI-denominated documents pertaining to SCI Cresson between 2010 until its closure that were produced by or at the b[eh]est of MHM, Inc.
2. Any reports, assessments, evaluations, audits, performance reviews, employee reviews, compliance reports, or other type of review pertaining to SCI Cresson between 2010 until its closure that were produced by or at the behest of MHM, Inc.

6

(ECF No. 133-9.) The CQI Request also sought the material the Palakovics sought in the June Request. (*Id.*) On the same day, the Palakovics also submitted a renewed Rule 30(b)(6) deposition notice that included a specific reference to CQI documents. (*Id.* at 4-5.) That renewed notice added the following topics:

g. Any reviews, assessments, audits, or Continual Quality Improvement (CQI) processes engaged in by MHM pertaining to SCI Cresson.
h. MHM's policies and practices regarding the scope, function, procedures, and purpose of CQI assessments engaged in by MHM between 2010 and the end of 2012.
i. Any involvement by MHM employees in the investigation of the United States Department of Justice (DOJ) into SCI Cresson,, including any interviews of MHM staff by DOJ or DOC officials in conjunction with said investigation, internal communications by MHM personnel, reviews of policies[,] and practices in response to said investigation[.]

(ECF No. 133-5.) MHM responded to the June Request on August 19, 2019, objecting on the bases of overbreadth and irrelevance, arguing that it was unlikely to lead to the discovery of admissible evidence, because all inmate care and treatment policies were the DOC's policies, not MHM's. (ECF No. 128 at 5.) Simultaneously, MHM objected to the Palakovics' renewed Rule 30(b)(6) Notice, asserting that Ms. Sheptock was properly able to testify on the subjects contained in the Palakovics' 30(b)(6) Notice, and that any lack of knowledge on her part was due to questioning outside the scope of the notice provided. (*Id.* at 5-6.) MHM further objected to producing a witness to testify on CQI issues on grounds of overbreadth, vagueness, undue burden, and that the Palakovics were seeking confidential information. (*Id.* at 6.)

To date, MHM, has not produced any documents in response to the CQI Request. (*Id.*)

## V. Legal Standard

### A. Motion to Compel

Federal Rule of Civil Procedure 26 provides the general framework for discovery in

7

federal civil litigation. Parties may obtain discovery of any matter that is both nonprivileged and relevant to a party's claim or defense, so long as it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. *See* Fed. R. Civ. P. 37. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The person resisting discovery must explain with specificity why discovery is inappropriate; a simple response that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982).

If the Court grants the motion—or if the nonmoving party provides the disclosure or requested discovery after the moving party filed the motion—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5). But in certain

circumstances the court must not order this payment: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. *Id.* 37(a)(5)(A).

## B. Motion for a Protective Order

Rule 26(c) also authorizes a person or party resisting discovery to move for a protective order. Fed. R. Civ. P. 26(c). If the movant establishes good cause for a protective order, the court may impose restrictions on the extent and manner of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A party can establish good case by "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984) (citation omitted). The alleged injury must be shown with specificity; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not establish good cause. *Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986) (citation omitted).

## VI.    Discussion

The Palakovics seek an order compelling MHM to comply with three discovery requests: (1) produce the Policy List (ECF No. 128 at 1); (2) comply with the CQI Request (*Id.* at 2.); and (3) comply with the 30(b)(6) Notice. (*Id.* at 1.)

MHM requests that this Court enter a protective order precluding the Palakovics from obtaining this information, or, in the alternative, enter a protective order limiting the scope of the Palakovics request. (ECF No. 133 at 10.) MHM also seeks a confidentiality agreement for any

9

information it must produce pursuant to an order from this Court granting the Palakovics'
Motion to Compel. (*Id.*) The Court will address the discovery requests in turn.

## A. The Court Grants the Palakovics' Motion to Compel Discovery of the Policy List and Denies MHM's Motion for a Protective Order

### 1. The Parties' Arguments

The Palakovics first assert that they seek the Policy List so that they can decide which of
those policies to request MHM to produce. (ECF No. 128 at 2.) The Palakovics argue that MHM
had policies for various different events, which included medications used for patient care, and
that policies governing medication usage are relevant to the case because Brandon had several
prescriptions, and because the Palakovics have claims that implicate MHM's medical care and
policies and practices. (*Id.* at 7–8.) The Palakovics maintain that other, "as yet unidentified"
policies may be similarly relevant. (*Id.*)

The Palakovics also argue that MHM's objection to the request for the Policy List is
defective because it failed to state whether MHM was withholding responsive materials on the
basis of its objection. (*Id.* at 8.) In addition, the Palakovics contend that because MHM has
produced policies that would be on the Policy List in past lawsuits, there should be no reason for
MHM not to produce a list of those policies here. (ECF No. 128 at 8–10.)

Finally, the Palakovics argue that MHM's objections to producing the Policy List on the
basis of irrelevance and that the Policy List is unlikely to lead to the discovery of admissible
evidence are contradicted by their own witness and rest upon an incorrect construction of
relevance. (*Id.* at 10–11.)

10

MHM responds that the Policy List is irrelevant and unlikely to lead to the discovery of admissible evidence. (ECF No. 131 at 3.) MHM argues that the DOC, not MHM, is responsible for promulgating all policies that cover the psychiatric treatment and care of DOC inmates. (*Id.*) MHM contends that while it has its own policies that govern such issues in some cases, those policies were not applicable to its employees at SCI Cresson because those employees were to follow DOC policies. (*Id.* at 3–4.) Consequently, a list of those policies is not relevant to any issue in the case. (*Id.* at 4.) MHM also maintains that although Dr. Eidsvoog may have stated in her deposition that she followed MHM policies, she later clarified her testimony by affidavit to reflect that she always followed DOC policies, negating any claim that the Policy List is relevant based on her earlier testimony. (*Id.*)

MHM also argues that the fact that they have produced their employment policies in previous lawsuits carries no weight here because those cases were employment disputes and did not involve claims that MHM's employees failed to provide proper care for inmates. (*Id.* at 4–5.)

## 2. The Palakovics Have Shown that the Policy List is Relevant and that Producing It Is Not Unduly Burdensome to MHM

Generally, parties may obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the action." Fed. R. Civ. P. 26(b)(1).

The Palakovics have met their burden to show that the Policy List is relevant. While DOC policies may have governed the actions of MHM's employees while working at SCI Cresson, those policies only relate to MHM's provision of psychiatric services, not to all aspects of MHM's presence at SCI Cresson, and the Palakovics have sufficiently shown that a list of all policies

11

MHM employees followed may "lead to the discovery of admissible evidence." (ECF No. 132-1; ECF No. 134 at 6.) *See* Fed. R. Civ. P. 26(b)(1).

MHM's argument that the request for the Policy List is unduly burdensome is unavailing. The Palakovics are not seeking every single policy MHM has for its workers, but only a list of those policies so that they can determine which policies, if any, the Palakovics may request MHM to produce. (ECF No. 133-7.) Further, the fact that MHM has, in other, similar actions, produced at least some of its policies and procedures weakens its argument that producing a list of those policies is burdensome. *See, e.g., Bartos v. MHM Correctional Servs., Inc.*, No. 3:09-cv-1018, 2011 WL 13196553, at *4 (M.D. Pa. 2011) (granting summary judgment on the basis that the Plaintiff had violated MHM's work policies, which were produced in discovery). MHM has previously produced the actual policies, which indicates that producing a list of those policies should not be burdensome.[3]

Accordingly, the Palakovics are entitled to discovery of the Policy List, and the Court will grant their Motion to the extent it seeks production of the Policy List and deny MHM's Motion to the extent that it seeks to prohibit the Palakovics from discovering the list.

## B. The Court Denies the Palakovics' Motion to Compel Discovery of the CQI Information and Grants MHM's Motion for a Protective Order in Part

### 1. The Parties' Arguments

The Palakovics contend that documents related to CQI or other, similar procedures, related to incidents of self-harm, are relevant to the case. (ECF No. 128 at 13–14.) The Palakovics also argue that the CQI Request is appropriately limited in scope and particularity so that MHM

---

[3] The Court expresses no view on whether any request that the Palakovics might make for policies found on the Policy List might be burdensome.

12

can reasonably produce the requested documents. (ECF No. 134 at 7–10.) Finally, the Palakovics maintain that the peer review privilege is not recognized in federal court and therefore inapplicable to this case. (*Id.* at 10–11.)

MHM responds that the CQI Request is "extremely" overbroad and vague, and requests information that is both confidential and privileged. (ECF No. 131 at 8.) MHM asserts that the CQI Request seeks matter beyond the subject matter of the Palakovics' claims and that, due to MHM's uncertainty as to what the Palakovics seek with the CQI Request, this Court should protect MHM from having to comply with the request. (*Id.* at 8–9.) MHM argues that the CQI Request could include information not relevant to this action, including information about employees who never interacted with Brandon or about units in which he was never housed, information not relevant to the instant action. (*Id.* at 9.) MHM also maintains that the information is confidential and protected by HIPAA,[4] as well as irrelevant and unlikely to lead to the discovery of admissible evidence. (*Id.*)

MHM also contends that the peer review privilege applies to the CQI Request and shields from discovery much of the information the Palakovics seek. (*Id.*)

## 2. The CQI Request Is Overbroad

Generally, parties may obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the action." Fed. R. Civ. P. 26(b)(1). To determine the proportionality or overbreadth of a discovery request, the Court looks to several factors: (1) the importance of the issues in the action; (2) the amount in controversy; (3) the parties'

---

[4] MHM refers to the Health Insurance Portability and Accountability Act, Pub. L. No. 104–91, 110 Stat. 1936 (1996), which provides for health information confidentiality, among other things.

relative access to the information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; (6) and whether the burden and expense of discovery outweigh the likely benefit of compelling discovery. Fed. R. Civ. P. 26(b)(1).

The Palakovics' CQI Request sought a broad swathe of information related to CQI documents or any other "reports, assessments, evaluations, audits, performance reviews, employee reviews, compliance reports, or other type of review" relating to SCI Cresson over a three-year period. (ECF No. 133-9.) CQI processes, at least post-2014, involve reviewing incidents of self-harm.[5] (ECF No. 133-3 31:12–15.) Given that MHM currently conducts CQI reviews of self-harm incidents, and that MHM has not shown why it would have begun assessing those incidents only in 2014, the Court holds that pre-2014 CQI documents relating to SCI Cresson are relevant to the Palakovics' claims and therefore discoverable.

However, the CQI Request is overbroad because it seeks all CQI documentation and all similar reviews related to SCI Cresson, not merely that documentation limited to topics that might be relevant to the Palakovics' claims or MHM's defenses. The CQI Request could potentially cover information about employees who did work that would not have impacted Brandon's incarceration and treatment or could include confidential information. The second part of the CQI Request, which sweeps even broader than the first part is similarly overbroad. "[A]ny type of review pertaining to SCI Cresson" is an extremely broad request. While both parts of the CQI Request may seek relevant information, the Palakovics have failed to show that the scope of the CQI Request is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

---

[5] Ms. Sheptock only began working for MHM in 2014, and is unfamiliar with CQI processes and procedures before that time. Accordingly, it is unclear whether MHM's CQI practices covered similar incidents in the years leading up to 2014.

14

Here, the proportionality balance favors MHM. The Palakovics have not demonstrated that CQI information is highly important to their claims. What MHM did to improve its psychiatric care of potentially suicidal inmates may be relevant to the claims in the case, but the Palakovics have not shown how the majority of the information they seek, for example, "any . . . type of review pertaining to SCI Cresson," is relevant to their claims or MHM's defenses. The amount in controversy is unclear, although it may be significant. The Palakovics have no other way to obtain this information, but MHM has indicated a willingness to produce CQI documents in response to a more targeted request, which is an avenue the Palakovics could pursue. (*See* ECF No. 133 ¶ 35.) There is no argument presented regarding the parties' respective resources, but it is safe to say that MHM's are likely greater than those of the Palakovics. The Palakovics have not shown how the broad swathe of information they seek, outside of some particular aspects, is likely to assist in resolving the issues in this case. Finally, it is not clear that the burden and expense of compelling MHM to produce the information sought will outweigh the benefit of producing it. While the second and fourth factors may favor the Palakovics, the other four favor MHM.

Accordingly, the Court denies the Palakovics' Motion to Compel to the extent that it seeks production of the documents requested in the CQI Request on the ground that the CQI Request is overbroad. The Court denies MHM's Motion for Protective Order to the extent that it seeks to bar disclosure of all CQI-related documents pertaining to SCI Cresson. However, the Court grants MHM's Motion for a Protective Order to the extent that it seeks to have any CQI-related information produced in response to a renewed, proper CQI request protected by a confidentiality order.

15

## C. The Court Will Deny the Palakovics' Motion to Compel A Second Rule 30(b)(6) Deposition and Will Grant MHM's Motion for a Protective Order

### 1. The Parties' Arguments

The Palakovics argue that they are entitled to a second 30(b)(6) deponent because Ms. Sheptock was unprepared and unresponsive. (ECF No. 128 at 11.) The Palakovics maintain that Ms. Sheptock was unprepared to testify on matters they identified in the 30(b)(6) Notice, and that a failure to produce a prepared and responsive witness is tantamount to failure to produce any witness at all. (*Id.*) The Palakovics assert that any objection that Ms. Sheptock was not specifically aware that the Palakovics would seek information on CQI-related topics is baseless because the Palakovics have no obligation to identify the exact documents they will question the deponent about, and that the corporate defendant must produce a competent deponent who is able to testify about matters that the corporation should reasonably know. (*Id.* at 12.) The Palakovics also object to MHM's attempt to shield discovery by using the peer review privilege by asserting that the privilege is unavailable in federal court. (*Id.* at 13.)

MHM replies that, in response to the Palakovics' first 30(b)(6) Notice, it produced Ms. Sheptock, a corporate witness fully qualified to testify on all subjects listed in the Palakovics' 30(b)(6) Notice. (ECF No. 131 at 5.) MHM argues that the Palakovics sought testimony that fell outside the scope of that notice, and that Ms. Sheptock was unable to provide testimony on those subjects because they were outside the scope of the 30(b)(6) Notice and her knowledge. (*Id.*) MHM objected to the Palakovics' renewed 30(b)(6) Notice on the grounds that a failure on the Palakovics' part to include desired topics in their original 30(b)(6) Notice should not permit them to obtain a second 30(b)(6) deponent or to re-depose Ms. Sheptock. (*Id.* at 5–6.) MHM asserts that: (1) the alleged deficiencies in Ms. Sheptock's testimony are only on issues that fell outside

16

the scope of the 30(b)(6) Notice; (2) Ms. Sheptock was prepared to testify on the subjects noticed in the 30(b)(6) Notice; and (3) that she attempted to answer questions outside the scope for which she was prepared to testify. (*Id.* at 6–8.) Accordingly, MHM asks the Court to bar the Palakovics from taking a second 30(b)(6) deposition.

## 2. The Palakovics Have Not Shown that MHM Failed to Produce A Properly Responsive 30(b)(6) Witness

Generally, absent leave of the Court, a party may not take a deposition of a person previously deposed in the case. Fed. R. Civ. P. 30(a)(2)(A). Rule 30(b)(6) permits a party to take the deposition of a corporation or entity; upon receipt of a 30(b)(6) notice, that entity must then provide an agent or designee to testify about "information known or reasonably available" to the entity on its behalf. Fed. R. Civ. P. 30(b)(6). A 30(b)(6) notice must specify, with "reasonable particularity," the matters the noticing party seeks testimony on. *Id.* "Reasonable particularity" means that the noticing party must provide enough description of the topics so that the responding party can properly prepare its deponent, which means that the responding party must be able to "reasonably identify the metes and bounds of the listed topics." *Fifth Third Bank v. Westwood Zamias Ltd. P'ship*, No. 3:18-cv-143, 2019 WL 1383713, at *2, (W.D. Pa. Feb. 6, 2019). A 30(b)(6) deponent need not have personal knowledge of the noticed topics, but she does have the obligation to prepare to speak on those topics, even if preparing to do so would be burdensome. *Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442, 459 (M.D. Pa. 2016).

Rule 30(b)(6) obligates the responding entity to provide a witness who can answer questions as to the subject matter contained in the notice. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-cv-6025, 2005 WL 6714281, at *2 (D.N.J. Nov. 7, 2005); *see King v. Pratt &*

17

*Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995), *aff'd*, 213 F.3d 646, 213 F.3d 647 (11th Cir. 2000). If the designee cannot answer the questions, the entity has failed to comply with Rule 30(b)(6) and may be subject to sanctions, which may include the Court permitting a second 30(b)(6) deposition. *Bracco*, 2005 WL 6714281, at *2; *see generally* Fed. R. Civ. P. 37 (empowering courts to issue orders to enforce the rules of discovery). If the deposing party asks questions outside the scope of the notice, the general deposition rules, contained in Rule 26(b)(1), govern, and the noticing party may ask the designee any relevant questions. *Bracco*, 2005 WL 6714281, at *2. If the designee does not know the answers to questions outside the scope of the notice, however, that is the deposing party's "problem," not the fault of the responding entity. *Id.* Although Rule 30(b)(6) does not limit the scope of questioning at a deposition, the entity noticed need only provide a designee responsible to the subject matter identified with "reasonable particularity" in the 30(b)(6) Notice. *Bracco*, 2005 WL 6714281, at *2.

The Court holds that Ms. Sheptock was an adequately prepared 30(b)(6) deponent. The Palakovics' 30(b)(6) Notice requested a deponent capable of testifying about MHM's staffing, MHM's employees' patient responsibilities, the frequency and circumstances of patient interactions, policies and practices of MHM's interactions with DOC psychology staff, record-keeping polices and practices, and the role of MHM staff in suicide prevention and assessment of self-harm incidents. (ECF No. 133-4.) Ms. Sheptock was able to testify about MHM's operations and staffing protocols before the deposition transitioned to matters outside the scope of the 30(b)(6) Notice. (*See, e.g.*, ECF No. 133-3 13:3–16.) At the deposition, counsel for the Palakovics' began questioning Ms. Sheptock about the existence of "financial audit[s, or] review[s] of practices, . . . contract compliance, [or] any type of review of how [MHM's] employees were

18

handling their responsibilities under the contract." (ECF No. 133-3 at 27:3–9.) Counsel then continued to question Ms. Sheptock about answers she provided in response to that initial question. (*Id.* at 27:10–35:14.) The initial 30(b)(6) Notice did not cover audits and reviews—they are not related to staffing, patient responsibilities, or interactions with DOC staff. They are, at best, tangentially related to MHM's record-keeping policies and practice and the role of MHM staff in preventing and assessing incidents of self-harm, but these topics were not identified with "reasonable particularity" in the initial 30(b)(6) Notice. MHM was not able to identify these topics as within the "metes and bounds" of the listed topics. *Fifth Third Bank*, 2019 WL 1383713, at \*2.

Ms. Sheptock was obligated to answer questions from the Palakovics' counsel, and she attempted to do so. (*See* ECF No. 133-3 at 26–35.) However, she was unable to answer several of counsel's questions, due to a lack of knowledge, ultimately leading the Palakovics' counsel to terminate the deposition. (*Id.*) MHM's counsel did not prevent Ms. Sheptock from answering the questions,[6] even to questions outside the scope of the notice. (*Id.*) Counsel for the Palakovics' terminated the deposition without exploring in depth Ms. Sheptock's knowledge on the subjects that the Palakovics did identify with "reasonable particularity." The questions asked were outside the scope of the notice, and while counsel for the Palakovics was entitled to ask those questions, because the 30(b)(6) Notice did not identify the topics with "reasonable particularity," MHM was under no obligation to produce a designee who was able to testify to those topics. *See Bracco*, 2005 WL 6714281, at \*2; Fed. R. Civ. P. 30(b)(6). The Palakovics' argument that they were unaware of certain of MHM's specific practices before they sent the 30(b)(6) Notice to MHM is

---

[6] Although defense counsel did place on the record objections to the scope of the questioning, she permitted questioning to go forward and Ms. Sheptock to answer. (ECF No. 133-3 at 28:25–29:16.)

unavailing. Although the Palakovics' may have been unaware that MHM referred to internal audits and reviews as CQI, the Palakovics could have included a generic reference to information on those general topics in the original 30(b)(6) Notice.

Accordingly, the Court denies the Palakovics' Motion to Compel to the extent that it seeks to enforce their renewed 30(b)(6) Notice, and grants MHM's Motion for a Protective Order to the extent that it seeks to bar the Palakovics from enforcing their renewed 30(b)(6) Notice.

## VII.    Conclusion

For the foregoing reasons, the Court grants the Palakovics' Motion in part and denies it in part; for the same reasons, the Court grants MHM's Motion in part and denies it in part.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENEE and DARIAN PALAKOVIC, | ) | **CIVIL ACTION NO. 3:14-145** |
| as Administrators of the Estate of | ) | |
| **BRANDON PALAKOVIC,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JOHN WETZEL, KENNETH CAMERON,** | ) | |
| **JAMIE BOYLES, JAMEY LUTHER, DR.** | ) | |
| **JAMES HARRINGTON, DR. DALEEP** | ) | |
| **RATHORE, DR. CAROL EIDSVOOG,** | ) | |
| **HEARING EXAMINER ROBERT REED,** | ) | |
| **CORRECTION OFFICER KUSHNER,** | ) | |
| **SERGEANT DOUS, MHM, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, upon consideration of Plaintiffs Darian Palakovic and Renee Palakovic's

Motion to Compel Discovery (ECF No. 128) and Defendants MHM Correctional Services, Dr.

Carol Eidsvoog, and Dr. Daleep Rathore's Motion for a Protective Order (ECF No. 133), **IT IS**

**HEREBY ORDERED** that Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**. **IT**

**IS FURTHER ORDERED THAT** Defendants' Motion is **GRANTED IN PART** and **DENIED IN**

**PART. IT IS FURTHER ORDERED THAT:**

1.  MHM must produce the Policy List no later than January 3, 2020.

2.  The Palakovics are barred from taking a second 30(b)(6) deposition of MHM.

3.  The Palakovics may submit a second request for CQI-related information with a
    narrowed scope, agreeable to both parties.

4. Any information produced subject to a second request for CQI-related information must be subject to a confidentiality order agreed upon by both parties.

BY THE COURT:

December 16, 2019

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE